**Petition of the UNITED STATES of America and Mathiasen's Tanker Industries, Inc., for exoneration from or limitation of liability as owners of THE USNS MISSION SAN FRANCISCO.**

**No. 1765.**

United States District Court
D. Delaware.

Oct. 7, 1957.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., and Leavenworth Colby, Washington, D. C., for petitioners, the United States of America and Mathiasen's Tanker Industries, Inc.

William H. Bennethum (of Morford & Bennethum) Wilmington, Del., and Thomas E. Byrne, Jr., (of Krusen, Evans & Shaw) Philadelphia, Pa., for claimant, Oskar Tiedemann and Co.

Harold Leshem, Wilmington, Del., and Joseph Weiner (of Freedman, Landy & Lorry) Philadelphia, Pa., for crew members.

CALEB M. WRIGHT, District Judge.

This matter arises out of a collision in the Delaware River at a location between Pea Patch Island and New Castle, Delaware, at approximately 12:30 a.m. March 7, 1957. The USNS "Mission San Francisco," operated by Mathiasen's Tanker Industries, Inc., pursuant to an agreement with the United States Navy's agency, the Military Sea Transportation Service, was in ballast bound for Paulsboro, New Jersey. The SS "Elna II,"

owned and operated by Oskar Tiedemann and Company, a Liberian corporation, was outward bound to pick up cargo at Baltimore, Maryland. In the vicinity where the reach of channel called the Bulkhead Bar Range joins the reach of channel known as the Deep Water Point Range the two ships collided. As a consequence, nine crew members of the "Mission San Francisco" and her pilot were killed and other crew members of the San Francisco and Elna sustained personal injuries.

On March 18, 1957, the owners of the S.S. "Elna II" libeled the United States of America and Mathiasen's Tanker Industries, Inc., as owners and operators of the USNS "Mission San Francisco" (Admiralty No. 1762). Thereafter, on March 19, 1957, the United States of America and Mathiasen filed an answer and cross-libel (Admiralty No. 1763). On the same date, Oskar Tiedemann filed Action No. 1764 in Admiralty, pleading for limitation of liability. Subsequently, on March 29, 1957, the United States of America and Mathiasen's Tanker Industries, Inc., filed limitation proceeding, No. 1765 in Admiralty.

Certain claimants have moved for the dismissal of the limitation proceeding in re Mathiasen's Tanker Industries, Inc., (Admiralty No. 1765) alleging that Mathiasen's Tanker Industries, Inc., is an improper party to maintain this action within the meaning of 46 U.S.C.A. §§ 183–189.

The question before the court is whether Mathiasen should be permitted to limit liability pursuant to 46 U.S.C.A. §§ 183–189.[1] To come within the pur-

1. 46 U.S.C.A. § 183: "(a) The liability of the owner of any vessel, * * * for any loss, damage, or injury by collision, * * * occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

46 U.S.C.A. § 186: "The charterer of any vessel, in case he shall man, victual, and navigate such vessel at his own

expense, or by his own procurement, shall be deemed the owner of such vessel within the meaning of the provisions of this chapter relating to the limitation of liability of the owners of vessels; and such vessel, when so chartered, shall be liable in the same manner as if navigated by the owner thereof."

46 U.S.C.A. § 189: "The individual liability of a shipowner shall be limited to the proportion of any or all debts and liabilities that his individual share of the vessel bears to the whole; and the ag-

view of these sections Mathiasen must either be an owner[2] or a charterer who mans, victuals and navigates a vessel.[3]

Respondent contends that "owner" as used in § 183(a) encompasses more than the holder of bare legal title.[4] It would include an owner pro hac vice.[5] This argument has merit and the court would be disposed to so conclude if alternate grounds for denying the petition to dismiss did not exist.

We come then to the issue whether Mathiasen was a "charterer who manned, victualed and navigated" under § 186. Petitioners assert "charterer" as used in § 186 is a term of art requiring a charter party, citing Jones & Laughlin Steel Corporation v. Vang.[6] In Jones, supra, petitioner sought to limit liability. Reference to the District Court's opinion indicates this position was untenable.[7] There the Court stated:[8]

"The Vesta Coal Company used whatever vessels it desired for the purpose of delivering to the respondent what that company sold to the respondent. A tug boat owned by the Vesta Coal Company delivered the barge in question to the landing of the respondent; the coal company paid its officers and crew. When once delivered at the landing place, the respondent had the right to detain the barge there until it was unloaded; and when unloaded, it

was placed in the Vesta fleet until the coal company was ready to remove it.

"We therefore conclude that respondent was a bailee of the barge while it was at its wharf for unloading purposes, and was responsible for a bailee's care of the boat as long as it was tied up at the wharf of the respondent. In re Pennsylvania R. Co., 2 Cir., 48 F.2d 559."

It might be added, the agreement permitting the detention of the barges was an oral understanding.[9] Clearly on these facts the Third Circuit was correct in denying limitation. For that court, however, to require evidence of an express charter party was to place a narrow construction on § 186 not necessary for its determination. For the above reasons Jones is not deserving of the broad interpretation that counsel for the petitioners would have the court conclude.

Austerberry v. United States[10] is more in line with what § 186 requires. There the United States commandeered a pleasure craft pursuant to an Act of Congress. Counsel argued that the United States could not limit liability because there was no charter party. In answer to this the court stated:[11]

"The mere fact that the government was not referred to as a charterer, in the document in which the boat was offered and accepted by the

---

gregate liabilities of all the owners of a vessel on account of the same shall not exceed the value of such vessels and freight pending: Provided, That this provision shall not prevent any claimant from joining all the owners in one action; nor shall the same apply to wages due to persons employed by said shipowners."

2. 46 U.S.C.A. § 183(a).

3. 46 U.S.C.A. § 186.

4. Flink v. Paladini, 1929, 279 U.S. 59, 49 S.Ct. 255, 73 L.Ed. 613; The Milwaukee, D.C.E.D.Wis.1931, 48 F.2d 842; Petition of Colonial Trust Co., D.C.Conn.1954, 124 F.Supp. 73.

5. Sir John Jackson Ltd. v. Owners of the Steamship "Blanche", 1908 Appeal Cases, 126: When this case was before

the English Court the equivalent of 46 U.S.C.A. § 186 was not included in the English limitation statute. The House of Lords interpreted "owner" to include a "charterer who manned, victualed, and navigated a ship," (owner pro hac vice) basing their construction on other statutes which imposed liability on an owner pro hac vice where all the statute contained was the term "owner".

6. 3 Cir., 1934, 73 F.2d 88.

7. Vang v. Jones & Laughlin Steel Corporation, D.C.W.D.Pa.1934, 7 F.Supp. 475, affirmed 3 Cir., 73 F.2d 88.

8. D.C.1934, 7 F.Supp. 475, 478.

9. 3 Cir., 1934, 73 F.2d 88, 90.

10. 6 Cir., 1948, 169 F.2d 583.

11. 6 Cir., 1948, 169 F.2d 583, 593.

Coast Guard for the duration of the war, is not of controlling importance, for the government took over its absolute control, subjected it to use as a government vessel, and caused it to be manned, provisioned, navigated, and supplied with all necessaries. We agree with the conclusion of the district court that the government was the chartered owner of the boat within the meaning of the applicable statutory provisions under which the petition to limit liability was filed."

In essence, Austerberry enunciates an exclusive possession and management test. An examination of the Mathiasen agreement shows that these indicia are present.

This agreement provides that the contractor (Mathiasen) "shall manage and conduct the business in connection with the operation of such tankers as may be furnished to it by the Government * * *." Article 1(a). The contractor "promises to manage and conduct the business of the Government with respect to such tankers * * *." Article 1 (b). All tankers "shall be redelivered to the Government in such condition as the Government may specify * * *." Article 15. The fair intendment of these provisions is that possession of the vessels passes to the contractor under the agreement.

The management standard is similarly met. The contractor shall "equip, fuel, supply, maintain, man, victual, and navigate the tankers." Article 5(b). The

contractor shall "procure all personnel necessary to fill the compliment of each tanker * * *." Article 5(c).[12] The contractor shall use the regular labor contract and "under no circumstances [shall he] execute separate labor agreements limited solely to the operation of Government owned tankers." Article 5 (d). Thus, Mathiasen must be considered a "charterer" within the meaning of the applicable statutory provision.

■ The question now is whether Mathiasen "manned, victualed and navigated" as that phrase is used in the statute.[13] It would seem difficult to find any language clearer than that set forth under Article 5(b)[14] to indicate that Mathiasen had the contractual obligation to man, victual and navigate within the purview of § 186. In fact, petitioners concede Mathiasen meets these requirements.[15] They contend, however, that this was not done at Mathiasen's expense,[16] because Mathiasen was to be reimbursed by the government under the terms of the cost plus contract. The court cannot agree with this view for several reasons. First, there was always the possibility the government would deny that the expenditures were within that class which were entitled to reimbursement.[17] Furthermore, the seamen and other third parties could look only to Mathiasen for remuneration.[18] Moreover, all contracts contemplate recovering cost and merely because it is specifically provided for by contract should not taint the agreement.[19] Finally, the provision

12. This provision includes the master as well as the seamen which is unlike the World War II agreements providing that the master shall be the employee of the United States.

13. 46 U.S.C.A. § 186.

14. Article 5(b) of the operating agreement provides: The contractor shall equip, fuel, supply, maintain, man, victual and navigate the tankers.

15. Petitioners' Brief, p. 13.

16. 46 U.S.C.A. § 186: "* * * at his own expense, or by his own procurement, * * *."

17. Article 8 of the contract states that only the "allowable cost[s]", as defined in paragraph (b) thereof are to be reimbursed.

18. A fair reading of the agreement indicates that contracts made by Mathiasen and third parties were to be personal agreements between Mathiasen and the third party. Mathiasen could not bind the government.

19. This agreement is essentially little different from the customary commercial contract providing for a fixed price. In contemplating the price parties normally consider two elements, namely, cost

reads at its "own expense or *procurement*." It is quite evident that Mathiasen, at the least, procured these elements. So viewed, Mathiasen comes within the statutory provisions.

 To grant this petition would narrowly construe what was intended to be a liberal statute.[20] It would substitute form for substance.[21] The basic policy behind the limitation statute was to encourage investment of risk capital in the shipping industry.[22] In addition to the pronounced policy of the older cases, the denying of this petition is in accord with other concomitant objectives of sound social and economic policy; namely, employing private initiative and incentive in the shipping industry;[23] affording contractual security to others operating under similar agreements;[24] and correlating imposition of liability with limitation of liability.[25]

and profit. Here the parties agreed that certain costs were to be recovered plus a fixed fee. Article 7(b) states:

"(b) The fixed fee includes, without limitation, the following:

"(i) Salaries of corporate officers, executives, department heads, administrative, clerical and office employees, port engineers, port captains, port stewards, paymasters and other technical employees, and other employees of the shoreside establishment.

"(ii) Payroll taxes, group insurance, and pension or annuity payments applicable to personnel in the above categories.

(iii) Travel expense incurred by any of the above personnel, except as set forth in Article 8(b) (2) (iv) hereof.

"(iv) Office and administrative expense, including rent, heat, light, power, office services, depreciation and repair of equipment, amortization of leasehold improvements, janitor service and expense, freight, cartage and express (except in connection with items used directly in the operation of the tankers), outside accounting and auditing fees and professional and clerical services, dues and memberships in trade associations and reporting services, subscriptions, contributions and donations, franchise taxes, occupational taxes or licenses, and other taxes except as provided in paragraph (b) (2) of Article 8, advertising, entertainment, gratuities, solicitation and selling expense, directors' fees and expenses, and interest.

"(v) Insurance, except that directed by the Insurance Branch of the Office of Naval Material to be acquired on the tankers hereunder.

"(vi) Legal fees in connection with corporate and management functions.

"(vii) Pay of relief crews, except when on board the tankers hereunder.

"(viii) Cost of communications, except as set forth in Article 8(b) (2) (v) hereof.

"(iv) [ix] Profit or loss on foreign exchange.

"(x) Profit."

20. Flink v. Paladini, supra. The Milwaukee, supra, 48 F.2d at page 842:

"* * * whatever discussion may be indulged as to what is included and what may be excluded in defining the term 'owner' as used in the limitation act and rules, the statute by including 'charterer', and the adjudications in cases arising under the law, disclose liberality toward scope and applicability."

21. As counsel for respondent indicated, there would be no question if the government had bare boat chartered the vessel to Mathiasen and Mathiasen in a separate agreement time chartered the same vessel back to the United States. To require the use of two instruments where one accomplishes the same purpose is to sanction the doing of a useless act.

22. The Main v. Williams, 1894, 152 U.S. 122, 14 S.Ct. 486, 38 L.Ed. 381.

23. To deny limitation would necessitate the government operating its own ships for it could ill-afford to do without the protection of the limitation statute. Thus, the pronounced policy of our government to employ private enterprise when and where practicable would be thwarted.

24. Without protection of limitation all existing operating agreements negotiated under the same terms would have to be discarded.

25. Essentially, the limitation act permits limitation only where liability is to be imputed. The act specifically provides, "liability must arise without privity or knowledge of the owner" § 183(a). In the instant litigation it is imputed liability which is asserted against Mathiasen. Therefore it would seem inconsistent to impute liability on the one hand and at the same time to deny limitation. See

In accordance with the foregoing, the petition to dismiss is denied.

An order in conformity herewith may be submitted.

Hust v. Moore-McCormack Lines, Inc., 1946, 328 U.S. 707 at page 734, 66 S.Ct. 1218, 90 L.Ed. 1534; overruled Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692.