259 F.2d 608
 Matter of the Petition of the UNITED STATES of America and Mathiasen's Tanker Industries, Inc., for Exoneration From or Limitation of Liability as Owners of THE USNS MISSION SAN FRANCISCO — Theodora Andanar, Widow of Thomas A. Andanar, Deceased, Etc., et al.
 No. 12557.
 United States Court of Appeals Third Circuit.
 Argued June 5, 1958.
 Decided September 26, 1958.
 
 Abraham E. Freedman, Philadelphia, Pa. (Joseph Weiner, Freedman, Landy & Lorry, Harold Leshem, Philadelphia, Pa., on the brief), for appellants.
 Leavenworth Colby, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Leonard G. Hagner, U.S. Atty., Samuel D. Slade, Harold G. Wilson, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.
 Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 This is a companion case to our No. 12,556, In the Matter of the Petition of Oskar Tiedemann for Exoneration From or Limitation of Liability. The opinion in that appeal was filed today, 259 F.2d 605.
 
 
 2
 Appellants' first point that this petition proceeding was improperly commenced in the District Court for the District of Delaware is the same as raised by them in Tiedemann. For the dispositive reasons stated in the Tiedemann opinion, we hold that the District Court for the District of Delaware has jurisdiction of this action.
 
 
 3
 There remains appellants' contention that Mathiasen's Tanker Industries, Inc., was not entitled to move for limitation of its liability.
 
 
 4
 We are here dealing with an express, written contract. Appellants insist that under it Mathiasen was neither owner nor charterer of the tanker. They cite our decision in Jones & Laughlin Steel Corporation v. Vang, 3 Cir., 1934, 73 F.2d 88, as their authority. In that case no one knew whether the original contract had been oral or written. Its amendments were oral. As the court stated, page 91, the decisive element was that the contract was one for "storage service and storage use". The opinion states that the intention of the parties must appear, there must be evidence of actual charter and that the parties intended to establish the relationship of charterer. But we do not read that opinion as demanding that the words "charter" or "charter party" be present in a contract in order for the person taking over the operation of the ship to be considered a charterer or temporary owner. In the Jones & Laughlin contract the only words touching the involved barge were "barge service" which concerned the stated storage service and use. While we do not consider that decision contrary to our view of the present problem, in any event, because the question there concerned a mere bailee who was nothing else, the court's comment on charters and charter parties and its text book references in connection therewith were not decisional.
 
 
 5
 The agreement before us indicates a far different situation. In it Mathiasen agreed to "* * * equip, fuel, supply, maintain, man, victual and navigate the tankers." It agreed that all tankers turned over to it "* * * shall be redelivered to the Government in such condition as to the Government may specify * * *." It agreed that "The contractor shall procure all personnel necessary to fill the complement of each tanker * * * the officers and members of the crew shall be subject only to orders of the Master or contractor * * * (and) shall be employees of the contractor at all times and not of the government * * *." Under the article entitled "Insurance-Liability to Third Parties", it agreed that "The Contractor shall procure from and maintain with a reputable carrier, approved by the Government, such available insurance as the Government * * * shall direct." And paragraph (d) of that article reads: "For the purpose of this Article, all officers and members of the crew of said tankers and of any other ships owned by, or operated by or for, the Government, and any other personnel employed in any capacity by the Government, shall be deemed to be third parties, and not employees of the Government."
 
 
 6
 Jones & Laughlin, supra, at page 91, defines a charter party as "a specific and * * * express contract by which the owner lets a vessel or some particular part thereof to another person for a specified time or use." We agree with the district court that the contract languge above quoted presents a clear picture of exclusive possession and management of the tanker in Mathiasen. Appellants argue that the fact Mathiasen was to be reimbursed by the government for its operational expense eliminated the former as having manned, victualed and navigated the tanker in the manner called for by 46 U.S.C.A. § 186.[1] Regarding this we repeat with approval Judge Wright's language in the district court:[2]
 
 
 7
 "The court cannot agree with this view for several reasons. First, there was always the possibility the government would deny that the expenditures were within that class which were entitled to reimbursement. Furthermore, the seamen and other third parties could took only to Mathiasen for remuneration. Moreover, all contracts contemplate recovering cost and merely because it is specifically provided for by contract should not taint the agreement. Finally, the provision reads at its `own expense or procurement.' It is quite evident that Mathiasen, at the least, procured these elements. So viewed, Mathiasen comes within the statutory provisions."
 
 
 8
 As we see it, Mathiasen's role under the contract partakes of the nature of both charterer and owner pro hac vice. Either status justifies its petition for limitation. We do not think that the clause providing for the vessel to be operated "in such service as the Government may direct" or the reference to government owned tankers as being "in the custody of the contractor" destroys the total effect of the contract making Mathiasen a charterer of the Mission. It seems to us that in every substantial sense needed to support its right to file the petition the contractor became just that. In Thorp v. Hammond, 1870, 12 Wall. 408, 20 L.Ed. 419, there was no agreement which named Hammond as the charterer but the vessel was commanded, sailed and exclusively managed by him "whereby" as the Supreme Court said, at page 416, "he had in effect become the charterer of the vessel." The Court on the following page specifically stated "Hammond, therefore, is to be regarded as the owner, because the charterer, and as such responsible for the tortious acts of the vessel." (Emphasis supplied.) See also Hines v. Butler, 4 Cir., 1921, 278 F. 877, affirming, D.C.D. Md.1920, 264 F. 986, certiorari denied 1921, 257 U.S. 659, 42 S.Ct. 185, 66 L.Ed. 421; Austerberry v. United States, 6 Cir., 1948, 169 F.2d 583. This same sort of broad construction was taken of the word owner in Flink v. Paladini, 1929, 279 U.S. 59, at page 63, 49 S.Ct. 255, 73 L.Ed. 613, where the Court said:
 
 
 9
 "We are of opinion that the words of the [limitation] acts must be taken in a broad and popular sense in order not to defeat the manifest intent * * * to interpret an untechnical word in the liberal way in which we believe it to have been used — as has been done in other cases."
 
 
 10
 We are satisfied that whether Mathiasen's status be accepted as charterer or owner pro hac vice "* * * [its contractual] relationship [to the ship] might reasonably furnish ground upon which a claim of liability for damage could be asserted." The Milwaukee, D.C. E.D.Wis.1931, 48 F.2d 842. In that case, speaking of the Flink opinion, supra, the court said: "That case seems to indicate that whether or not one is to be deemed an `owner' depends largely upon the possibility that he may be subjected to a liability which ordinarily is assertable against one having, or claiming to have, proprietorship or dominion over the subject of the proceeding. It negatives the thought that `owner' of, or to `own' a vessel means the situs of full title, interest, or dominion, and that nothing else is within the definition of the right or the range of the statute." See also Petition of Colonial Trust Co., D.C.D.Conn.1954, 124 F.Supp. 73.
 
 
 11
 Mathiasen was the employer of the personnel whose alleged negligence in part at least is asserted as the cause of the collision. Also it had the obligation of procuring "* * * all personnel necessary to fill the complement of each tanker" and to man, equip and supply the Mission. From that obligation it must follow that if the ship was unseaworthy, because she was not fully and properly manned, equipped and supplied, as charged, responsibility may well be ascribed to Mathiasen. A prime purpose of the limitation acts has been to promote the employment of vessels in commerce and the encouragement of persons engaged in the business of navigation. American Car & Foundry Co. v. Brassert, 1933, 289 U.S. 261, 263, 53 S. Ct. 618, 77 L.Ed. 1162; Moore v. American Transportation Co., 1860, 24 How. 1, 39, 16 L.Ed. 674. Mathiasen in this collision, as to third parties, had virtually the responsibility of the record owner. Under the theory and purpose of the statute Mathiasen should be afforded the same kind of protection against the possibility of the crushing loss which might arise as is given said owner.
 
 
 12
 The order of the district court of January 9, 1958 will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 46 U.S.C.A. Section 186 reads:
 "The charterer of any vessel, in case he shall man, victual, and navigate such vessel at his own expense, or by his own procurement, shall be deemed the owner of such vessel within the meaning of the provisions of this chapter relating to the limitation of liability of the owners of vessels; and such vessel, when so chartered, shall be liable in the same manner as if navigated by the owner thereof."
 
 
 [2]
 1957, 155 F.Supp. 714, 717