Petition of the **UNITED STATES** of America and Mathiasen's Tanker Industries, Inc., for Exoneration From or Limitation of Liability as Owners of the U.S.N.S. **MISSION SAN FRANCISCO,** United States of America, Appellant in No. 15294.

Mathiasen's Tanker Industries, Inc., Appellant in No. 15281.

Nos. 15294, 15281.

United States Court of Appeals Third Circuit.

Argued May 26, 1966.

Decided Sept. 12, 1966.

Leavenworth Colby, Atty., Admiralty and Shipping Section, Civ. Div., Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief), for Mathiasen's Tanker Industries, Inc., and the United States.

Abraham E. Freedman, Freedman, Borowsky & Lorry, Philadelphia, Pa., for claimants-appellees except David Black.

William Warner, Symmers, Fish & Warner, New York City, for appellee David Black.

Before HASTIE and GANEY, Circuit Judges, and CLARY, District Judge.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

Our opinion today, In the Matter of the Petition of Oskar Tiedemann and Company, 367 F.2d 498, deals with appeals centering on the liability of Oskar 'Tiedemann & Co., the owner of the ship Elna II, as imposed by the consolidated decree in which the district court undertook to make final disposition of numerous death and personal injury claims which resulted from the collision of the ships Elna II and Mission San Francisco. The present opinion deals with those appeals from the consolidated decree which question relief granted to claimants against the United States, as owner, and Mathiasen's Tanker Industries, Inc., as operator, of the naval supply ship Mission San Francisco.

We consider first a contention that under the relevant statutes the United States alone is liable on the seamen's death and personal injury claims and that the additional entry of judgment against Mathiasen's Tanker Industries was error.

The essential facts concerning the ownership and operation of the vessel were pointed out in an earlier stage of this litigation. See 155 F.Supp. 714, aff'd 259 F.2d 608; 179 F.Supp. 227, aff'd 289 F.2d 237. Briefly, Mission San Francisco was an undocumented tanker

owned by the United States. At the time of the collision, this tanker was being operated by Mathiasen under a contract with Military Sea Transportation Service, an agency of the United States Navy. The agreement provided that Mathiasen would "manage and conduct the business of the Government with respect to" the tanker and, to that end, would "equip, fuel, supply, maintain, man, victual, and navigate" the ship. Mathiasen supplied a master and a civilian crew. There is no suggestion that under this contract the tanker could be or ever was used except in "the business of the Government", more particularly as a naval supply ship. Affirmatively, the court below found that the vessel had most recently delivered and discharged a cargo of jet aviation fuel for the Navy and was proceeding in ballast on another mission as directed by the Navy when the collision occurred.

Relying on these facts, the claimants here argue that Mathiasen was such a "charterer or owner pro hac vice" as under established principles of law must respond in damages for harm caused by the negligent navigation of the vessel operated by it. Moreover, it is argued that we already have so decided in affirming the district court's refusal to dismiss Mathiasen's limitation petition, 259 F.2d 608, and later affirming the decision that the dangerous condition and grossly negligent navigation of the ship were such as to deprive both its owner and its operator of the benefit of limited liability. 289 F.2d 237.

 Our earlier decisions in this case neither considered nor foreclosed the contention now made that the relevant federal statutes provide for recovery against the United States as owner of a public vessel and preclude recovery against Mathiasen as operator for the government, even though but for such legislation the operator might also be liable. A petition for limitation of liability, such as Mathiasen filed here neither admits liability nor waives any defense. Smith v. United States, 4th Cir., 1965, 346 F.2d 449, cert. denied 382

U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119; Petition of Spearin, Preston & Burrows, 2d Cir., 1951, 190 F.2d 684. It is an anticipatory protective measure to avoid full personal responsibility if liability shall later be imposed. Accordingly, the first decision of the district court and our affirmance of it merely recognized that as the person who operated a ship, employing a master and a crew for that purpose, Mathiasen faced sufficient risk of liability for harm caused by that ship to justify it in asking for a limitation of liability. In that connection, we said merely that "responsibility may well be ascribed to Mathiasen". See 259 F.2d at 611. This in no way precluded Mathiasen from asserting as a defense later, when injured parties attempted to prove their claims against both the United States and Mathiasen, that the controlling statutes made the government exclusively liable for Mathiasen's operation of a public vessel.

Similarly, in later affirming the refusal of the district court to grant Mathiasen limitation of liability we held merely that the dangerous condition and improper navigation of the naval ship were such as to deprive anyone who might be responsible for her faults, whether the owner or the operator, or both, of the benefits of limitation of liability. Here again, we neither considered nor decided whether, in the circumstances of this case, the controlling statutes permit recovery against both the government and the operator.

This brings us to the merits of the controversy concerning the liability of Mathiasen. As against the United States the claimants necessarily rely upon the Public Vessels Act, 46 U.S.C. §§ 781–790, and its incorporation of the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, as serving to waive sovereign immunity and to permit and regulate libels against the United States for "damages caused by a public vessel of the United States". 46 U.S.C. § 781. But in thus permitting recovery against the United States, Congress has stipulated that "where a remedy is provided * * * [against the Unit-

ed States] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent * * * of the United States * * * whose act * * * gave rise to the claim". 46 U.S.C. § 745.

■ Preliminarily, the claimants urge that Mission San Francisco was not a "public vessel of the United States". But for this contention, we would have thought it too clear for serious argument that a ship owned by the United States and used as directed by the Navy for the transportation of military supplies is "a public vessel of the United States". However, we must deal briefly with the contention that the manning and operation of the vessel by Mathiasen, a private corporation, make it something other than a public vessel, presumably a merchant ship. We find no case which supports this view. Certainly the two cited by the claimants do not. One of them, Calmer S. S. Corp. v. United States, 1953, 345 U.S. 446, 73 S.Ct. 733, 97 L.Ed. 1140, mentions the Public Vessels Act only tangentially. The issue there was whether a privately owned ship operated for hire on a war mission for the United States was "employed as a merchant vessel", and the Court decided that the ship was so employed. There is no suggestion that in similar circumstances a government owned vessel would be a merchant vessel rather than a public vessel. Equally unhelpful is the claimants' citation of George W. Rogers Const. Corp. v. United States, S.D.N.Y. 1954, 118 F.Supp. 927. There a government owned ship operated by "civil service employees of the United States" was found to be a public vessel. But this does not imply, as the claimants argue, that only ships operated by such civil service employees are public vessels. We think government ownership and use as directed by the government exclusively for a public purpose suffice without more to make a ship a public vessel. Smith v. United States, 4th Cir., 1965, 346 F.2d 449, cert. denied 382 U.S. 878, 86 S.Ct. 163; cf. Bradey v. United States, 2d Cir.,

1945, 151 F.2d 742; Sbarbaro v. United States, E.D.Pa.1953, 112 F.Supp. 93.

Despite the status of the ship as a public vessel, the claimants argue that the statutory provision for exclusive liability of the United States is inapplicable here. It is argued that Mathiasen was not "the agent * * * of the United States * * * whose act * * gave rise to the claim" within the meaning of section 745 of title 46. Undoubtedly, Mathiasen's faulty navigation of the ship caused the collision. Therefore, the contention must be that Mathiasen was not an "agent of the United States" within the meaning of the statute. Accordingly, we must decide whether in section 745 Congress used "agent" comprehensively to include such a contract operator as Mathiasen was in this case.

■ As a matter of legal definition, "agent" of the United States is an appropriate characterization of such a contract operator of a public vessel as Mathiasen. The accepted distinction between "servant" and "independent contractor" may place Mathiasen in the latter category, since it is arguable that Mathiasen's day to day working of the ship was not subject to government control. See Restatement, Agency, 2d, § 2. But an independent contractor, no less than a servant may be an agent in that he is employed as a fiduciary, acting for a principal with the principal's consent and subject to the principal's overall control and direction in accomplishing some matter undertaken on the principal's behalf. Restatement, Agency, 2d, § 14 N.

■ Certainly, under the contract in this case Mathiasen owed the United States obedience and loyalty and was in significant ways subject to the government's direction and control. Mathiasen expressly agreed "to manage and conduct the business of the Government with respect to such tankers" as the government should furnish "solely in the public use or in the protection of the National interest or economy". The government was to prescribe "voyages and cargoes".

While Mathiasen undertook to "man, victual and navigate" the ships, the government was empowered "to terminate the employment of the master or any member of the crew" as the public interest *might* dictate. *Wages of the crew and all costs of operating the ships,* though paid byMathiasen, were reimbursable by the government. *We think the* general sense and specific details of this agreement disclose a relation of principal and agent within the accepted legal conception of an agency relationship. Another court of appeals has already reached this conclusion in characterizing an identical contract. Smith v. United States, supra.

This normal reading and application of the language of the contract is in accord with the manifest intention of Congress. On April 8, 1949, when the legislative proposal that became section 745 was before Congress the Attorney General responded to Congressional solicitation of his views by recommending to the Chairman of the House Committee on the Judiciary that Congress make the remedy granted against the government "exclusive of any other action * * * against any employee, agent or instrumentality * * * acting for or on behalf of the United States in the management and operation of its vessels". See H.Rep. No. 1292, 81st Cong., 1st Sess., 1949, p. 4; 1951 A.M.C. 151, 154. This language differed from the text of the bill then before Congress in the inclusion of the phrase "or instrumentality" after the word "agent". Thereafter, in reporting the final and present text to the Congress, both House and Senate Committees explained "that the language suggested by the Department of Justice *in respect of the exclusive provision* constitutes an immaterial variation in the language of the bill as drawn". H. Rep. No. 1292, supra p. 5. This indicates that in the Congressional view the general statement of an agency concept as enacted included any instrumentality through and by which public vessels were operated.

Also noteworthy is the language of a proviso to section 745 which implements the declared exclusive liability of the United States by waiving the statute of limitations in certain cases. The scope of the waiver is stated in terms of any situation in which "any person, partnership, association, or corporation, [is] engaged by the United States to manage and conduct the business of a vessel owned or bareboat chartered by the United States". The proviso, with its quoted coverage of the present type of contract operation, appears to be *in pari materia* with the preceding direction that the liability of the United States be exclusive. Thus, it may reasonably be inferred that the general agency language in the associated clause on exclusive liability covers the same kind of contractual arrangement.

Even more significant is language used in the "Analysis of the Bill" which is part of a second Senate Report on this legislation. It is there stated that the provision that the liability of the United States shall be exclusive "declares the rule announced by the Supreme Court in Cosmopolitan Shipping Co. v. McAllister (337 U.S. 783, [69 S.Ct. 1317, 93 L.Ed. 1692] 1949 A.M.C. 1031), Caldarola v. Eckert (332 U.S. 155, [67 S.Ct. 1569, 91 L.Ed. 1968] 1947 A.M.C. 847), and Johnson v. [United States Shipping Board] Emergency Fleet Corp., 280 U.S. 320 [50 S.Ct. 118, 74 L.Ed. 451], 1930 A.M.C. 1)." S.Rep. No. 2535, 81st Cong., 2d Sess., 151 A.M.C. 149, 151. The three cited cases, considered together, cover a variety of circumstances in which governmental maritime activity is conducted through private contractors. One of the cases, Johnson v. United States Shipping Board Emergency Fleet Corporation, specifically considers several situations, including that of a contract operator indistinguishable from Mathiasen here, and holds that governmental liability is exclusive. Thereafter, a subsequent decision, unmentioned in the Senate Report, had overruled that part of the *Johnson* holding which covered cases like ours. Brady v. Roosevelt Steamship Co., 1943, 317

U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471. Thus, it is reasonable to infer from the quoted language of the legislative analysis that Congress intended to restore the *Johnson* decision in its entirety and in so doing to make governmental liability exclusive throughout a broad spectrum of contractual arrangements for the operation of public vessels, including the type presented by the Mathiasen contract.

■ For these reasons we have concluded that, by force of the exclusive liability clause of section 745, any right to recovery against the United States here for injury caused by its public vessel precludes recovery for the same injury against the contract operator whose conduct was the immediate cause of the accident.

It remains to consider the appeals of the United States and Mathiasen from the awards made to the estate of David Black, the radio operator of the public vessel who was killed in the collision. Black's administrator, different from the other death claimants, sought recovery for the economic value of decedent's life under the Delaware Wrongful Death Act, 10 Del.Code Anno. § 3704(b), as well as recovery for the loss to dependents under the Jones Act, 46 U.S.C. § 688. The commissioner awarded $26,575 under the Jones Act and $36,135 under the Delaware Wrongful Death Act, a total of $62,710. The district court, after a discussion in its opinion that suggests liability of the United States under the Delaware Wrongful Death Act and liability of Mathiasen under the Jones Act, "sustained" the findings of the commissioner and entered judgment against both the United States and Mathiasen for the full amount of $62,710. The appellants now argue that no recovery was permissible against Mathiasen and only Jones Act recovery against the United States.

The United States is suable here because Congress has waived sovereign immunity from liability for damage "caused by a public vessel of the United States". 46 U.S.C. § 781. Accordingly, wherever the faults of a public vessel or its operation are such as would make a private owner liable, personal liability for harm thus caused may be imposed upon the United States. Moreover, as we already have pointed out, if a remedy exists against the United States, section 745 makes that remedy exclusive of any recovery against an agent of the United States whose conduct gave rise to the claim. In this case, the collision was caused by the negligent navigation of a public vessel and resultant damage was multiplied by the dangerous condition of its empty tanks within which highly inflammable gases had been permitted to accumulate and remain. The immediate cause of the collision was the negligent conduct of the contractor Mathiasen to whom the operation of the ship had been entrusted. Thus, if a person injured in the accident has a remedy against the United States, the availability of that remedy precludes recovery against Mathiasen.

Black's claim against the United States under the Jones Act, like the claims made on behalf of the other members of the public vessel's crew who were killed or injured has been allowed.

But in Black's case, unlike the others, it is now argued that full and proper recovery includes a Jones Act award against Mathiasen and an additional award against the United States under the Delaware Wrongful Death Act.

While in the circumstances of this case the determination of the proper Jones Act respondent is not free from doubt, we have concluded that the United States is liable to Black's estate and to the others similarly situated under the Jones Act. Difficulty arises because Jones Act recovery is normally allowed only against the complaining seaman's employer, and in this case Mathiasen hired the crewmen and exercised immediate control over them pursuant to a contract with the United States which specified that the members of the crew would be employees of Mathiasen and not of the United States.

■ The Jones Act does not in terms designate the injured seaman's employer as the person against whom it grants a remedy. However, it does grant the seaman a cause of action for negligent injury in the course of his employment equivalent to that which the Federal Employers' Liability Act, 45 U.S.C. § 51, confers upon railroad workers against their employing carriers. Accordingly, the normal rule is that the seaman's employer, and that employer only, is liable under the Jones Act. Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 69 S.Ct. 1317. However, the determination of the proper Jones Act defendant in public vessel cases is affected by the exclusive liability provision of section 745. In that section Congress attempted to resolve uncertainties and confusion whether the United States or its contractual instrumentality could be sued, as reflected in a series of maritime cases, several of them Jones Act cases from Johnson v. United States Shipping Board Fleet Corp., 1930, 280 U.S. 320, 50 S.Ct. 118 to Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 69 S.Ct. 1317. This was accomplished if section 745 is construed as designating the United States rather than its agent as the entity suable on all claims for harm done by a public vessel as a result of the agent's conduct. Cf. Richmond Screw Anchor Co. v. United States, 1928, 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303 (construing and applying a similar provision concerning patent infringement by government contractors). The logical implication of this statutory designation of the party to be held responsible is to impose liability on the United States in Jones Act cases whether it or its operating agent is conceptually the seaman's employer. Cf. North Carolina R. R. Co. v. Zachary, 1914, 232 U.S. 248, 34 S.Ct. 305, 58 L.Ed. 591. Indeed, any other construction would perpetuate the very uncertainty as to whom a seaman should sue for injury caused by a public vessel which Congress has sought to eliminate.

This substitution is fair and reasonable. We are here concerned with the situation of a vessel both owned by the United States and engaged exclusively in the business of the United States. This is quite different from the ordinary demise in which the charterer uses the vessel for his own purposes and the owner has no interest in the activity of the chartered ship. Therefore, even if in a technical view a particular arrangement for the operation of a public vessel may make the contract operator the "employer" of the crew, the vessel and its crew are serving the United States.

■ In these circumstances the scheme and the remedial purpose of the legislation are best served by construing section 745 as permitting an employer's Jones Act liability to be imposed upon the United States vicariously.

■ It remains only to consider briefly whether, as against the United States, both Jones Act relief and a recovery under the Delaware Wrongful Death Act are permissible. The short answer is that the Supreme Court has clearly ruled that the Jones Act remedy is exclusive and, when applicable, bars relief against the same defendant under a state wrongful death statute. Gillespie v. United States Steel Corp., 1964, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199; Lindgren v. United States, 1930, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686. Thus, Black's estate can recover only under the Jones Act.

On this appeal the consolidated decree will be modified by eliminating all recovery allowed to the several claimants against Mathiasen's Tankers Industries, Inc., and by eliminating from the award to Julius Black as Administrator of the Estate of David B. Black against the United States all recovery allowed under the Delaware Wrongful Death Act, with costs to the appellants.