**In the Matter of the Complaint of CHES-APEAKE SHIPPING, INC. and Gleneagle Ship Management Co., Inc.**

**For exoneration From or Limitation of Liability.**

**Debra J. McHUGH, Individually, and on Behalf of her minor children, Stephanie J. McHugh, Kimberly N. McHugh and Ryan D. McHugh, and as Administratrix of the Estate of Steven McHugh, Plaintiffs,**

v.

**GLENEAGLE SHIP MANAGEMENT CO., INC., Defendant.**

**Nos. 90 Civ. 1772 (CSH), 91 Civ. 3155 (CSH).**

United States District Court, S.D. New York.

Nov. 7, 1991.

Nourse & Bowles, New York City (Thomas E. Stiles, of counsel), for plaintiffs in No. 90 Civ. 1772 (CSH) and for defendant in No. 91 Civ. 3155 (CSH).

Phillips Cappiello Kalbin Hofmann & Katz, New York City, Michael E. Shelton, Houston, Tex., for Earl Washington, claimant in No. 90 Civ. 1772 (CSH).

Kreindler & Kreindler, New York City, (Melvin I. Friedman, of counsel), for plaintiff in No. 91 Civ. 3155 (CSH).

**154**

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this admiralty action, Gleneagle Ship Management, Co., Inc. ("Gleneagle"), a co-plaintiff in 90 Civ. 1772 and the defendant in 91 Civ. 3155, claims the benefits of the limitation of liability procedures of 46 U.S.C. App. §§ 183–185 and 188. In 90 Civ. 1772 Gleneagle, as a co-plaintiff with Chesapeake Shipping, Inc. ("Chesapeake"), has filed a complaint for exoneration from or limitation of liability under the statute. As a defendant in 91 Civ. 3155, Gleneagle pleads the limitation of liability statute as a second affirmative defense to the complaint of plaintiff Debra J. McHugh.

Earl Washington, a claimant in the proceeding for exoneration from or limitation of liability, 90 Civ. 1772, now moves to dismiss the complaint on behalf of Gleneagle. McHugh, plaintiff in 91 Civ. 3155, moves to strike Gleneagle's second affirmative defense. The ground for both motions is that Gleneagle lacks the standing to invoke the limitation of liability statute.

### Background

The complaint of Chesapeake and Gleneagle in 90 Civ. 1772 alleges that between February 17 and 20, 1990, the M/V SURF CITY loaded a cargo of naphtha and gas oil in Kuwait for delivery to Mediterranean ports. On February 22, 1990, while navigating the Persian Gulf, the SURF CITY suffered explosions and fires and was abandoned by her crew. The master and chief officer (Steven McHugh, the decedent of plaintiff Debra J. McHugh in 91 Civ. 3155) were killed. Several officers and members of the crew allege personal injuries. Cargo loss and damage occurred. Professional firefighters and salvors extinguished the flames on or about March 6, 1990. A general average has been declared.

In the circumstances, Chesapeake and Gleneagle filed a complaint for exoneration from or limitation of liability, invoking 46 U.S.C. App. §§ 183–185 and 188. Complaint, ¶ 20. They filed a stipulation for value and obtained an *ex parte* order from

this Court staying actions pursuant to the limitation of liability statute and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims, Fed.R.Civ.P.

The only allegations in the complaint for exoneration or limitation which describe the relations of Chesapeake and Gleneagle to the vessel and to each other appear in ¶ 19, which reads in its entirety as follows:

Plaintiff, Chesapeake Shipping, Inc. as owner of the M/V SURF CITY claims exoneration from liability for any and all losses, damages, injuries or destruction caused by said casualties, or done, occasioned or incurred on the voyage during which the said casualties occurred and for any and all claims therefor. Plaintiff Gleneagle Ship Management, Co., Inc., manager of the vessel and employer of the crew, fears that it will be sued as if it were the owner/operator of the M/V SURF CITY. Plaintiff, Gleneagle Ship Management, Inc. also claims exoneration from liability for any and all losses, damages, injuries or destruction caused by said casualties, or done, occasioned or incurred on the voyage during which the said casualties occurred and for any and all claims therefor.

¶ 20 of the complaint alleges in part:

If plaintiffs Chesapeake Shipping, Inc. and/or Gleneagle Ship Management, Inc. be adjudged liable as owner of the vessel or liable as a result of the ownership, navigation, operation, maintenance, chartering and/or control of the vessel, those plaintiffs, alternatively claim the benefit of limitation of liability as provided in Sections 4283, 4284, 4285 and 4289 of the Revised Statutes of the United States (46 USCA § 183–5 and 188), ...

Washington and McHugh contend on these motions that Gleneagle lacks standing to invoke the limitation of liability statute, since Gleneagle does not allege that it was the owner of the SURF CITY within the meaning of 46 U.S.C. App. § 183, or a charterer who manned, victualed, and navigated the vessel at its own expense under § 186, and that only a vessel owner or a § 186 charterer (known in the trade as a

bareboat charterer) may invoke limitation of liability.

The affidavit in opposition of Gleneagle's counsel argues for the conclusion that both Chesapeake and Gleneagle are entitled to seek exoneration or limitation in one action, given "the combined responsibility that each had ..." Counsel argues that the "background" of how the CHESAPEAKE/GLENEAGLE relationship came about is "quite unique," and then offers this discussion:

> The relationships of the parties in this action are the result of the war between Iran and Iraq. The background is set forth in detail. *See Kuwait Tanks: Hearings Before the House of Representatives Committee on Merchant Marine & Fisheries*, 100 Cong., 1st Sess. 37 (1987). The final end result was that eleven vessels, including the SURF CITY, were reflagged to be American Flag vessels. The requirement being that they had to be owned by an American corporation and ownership was placed in CHESAPEAKE, a Delaware corporation [sic]. Initially it was required that the Master and Radio Officer be American seamen and prior to the time of the incident involved in this suit the whole crew consisted of American seamen. In order to most effectively perform the duties arising out of the incident of "ownership" for which exoneration and/or limitation is permitted by the U.S. statute, these duties were divided between CHESAPEAKE and GLENEAGLE.

> Affidavit of Thomas E. Stiles, Esq., verified October 15, 1991 at 3.

This discussion is less than wholly illuminating, since the cited legislative history is neither attached nor quoted from, and the division of duties between Chesapeake and Gleneagle is not specifically described. As noted, the only pertinent allegations in the complaint are that Chesapeake was the "owner" of the SURF CITY and Gleneagle was "manager of the vessel and employer of the crew."

*Discussion*

46 U.S.C. App. § 183(a) limits the "liability of the owner of any vessel" to the post-casualty "amount or value of the interest of such owner in such vessel, and her freight then pending," subject to the provisions of § 183(b), which requires the posting of an additional fund calculated on the basis of $420 per ton of the vessel's tonnage in respect of claims for loss of life or bodily injury.

§ 186 confers the right of limitation of liability upon the "charterer of any vessel, in case he shall man, victual, and navigate such vessel at his own expense, or by his own procurement ..."

It is generally said that § 186 carries with it the "negative implication that except for the owner only the type of charterer who 'mans, victuals and navigates' can claim the protection of the Limitation Act." Gilmore & Black, *The Law of Admiralty* (2d ed. 1975) at 840.

One seeking to invoke the limitation of liability statute bears the burden of pleading facts establishing entitlement to do so. In *E.I. DuPont de Nemours v. Bentley*, 19 F.2d 354 (1927), the Second Circuit said *per curiam:*

> It must appear from the pleading itself that the petitioner is a charterer of the kind described in the statute, and here it is too plain for discussion that the charter party did not make him such.... Whether other facts might bring him within the statute we need not inquire. We must go by the pleading. (citation omitted)

Accordingly I put aside counsel's affidavit: no great loss since it obscures as much as it illuminates. I am left with Gleneagle's pleading, which identifies Chesapeake as the owner of the SURF CITY, and does not allege that Gleneagle is the sort of charterer falling within § 186.

The moving parties say that is the end of the matter. However, in *In re Petition of United States*, 259 F.2d 608 (3rd Cir.1958), the Third Circuit held that the words "charter" or "charter party" need not be present in a contract with the registered owner "in

order for the person taking over the operation of the ship to be considered a charterer or temporary owner" for limitation of liability purposes. *Id.* at 609. In that case, the court of appeals conferred coverage under the limitation of liability statute to a ship operator who entered into an agreement with the government as vessel owner to "... equip, fuel, supply, maintain, man, victual and navigate the tankers." The contract specifically provided that the officers and members of the crew were subject only to the orders of the master or the contractor, and "shall be employees of the contractor at all times and not of the government." *Ibid.* The Third Circuit reasoned that the contractor's role under the contract "partakes of the nature of both charterer and owner pro hac vice, either status being sufficient to bring the contractor within the statute." *Id.* at 610.

In *American Commercial Lines v. United States,* 590 F.Supp. 816 (E.D.Mo. 1984), involving the grounding of a barge under tow and consequent damage to the barge's cargo, the district court permitted the corporate "operator" of the vessel and barge to file a complaint for limitation of liability, together with the corporate "owner." The opinion contains no discussion of the terms of the arrangements between these two corporate entities.

In *Calkins v. Graham,* 667 F.2d 1292 (9th Cir.1982), the Ninth Circuit rejected the claim of an individual that he was the "managing agent" of the vessel in question, even though not in possession or control of the vessel at the time of the accident. The plaintiff for limitation in that case relied upon the Third Circuit's decision in *Petition of United States, supra,* but the Ninth Circuit distinguished that case on the ground that there was no agreement in *Calkins* obligating the individual in question to "equip, fuel, supply, maintain, man, victual and navigate" the vessel in suit. 667 F.2d at 1296.

In the case at bar, Gleneagle does not cite 46 U.S.C. App. § 186. Accordingly its theory must be that it should be regarded as the "owner" of the SURF CITY, or at least a co-owner with Chesapeake, under

§ 183. That approach is understandable, since the more recent authority makes it plain that to qualify for limitation of liability as a charterer under § 186, the plaintiff for limitation must exercise the specific areas of control over the vessel delineated in the statute. Thus following two major disasters, "major oil companies who time chartered vessels from wholly owned subsidiary transportation companies have sought to avail themselves of the limitation act. In both cases, the court refused to ignore the corporate formalities and denied limitation to the parent corporations." Rodriguez and Jaffe, *An Overview of U.S. Law of Shipowner's Limitation of Liability,* Maritime Law Association of the United States Doc. No. 691 at 9625 n. 8 (October 31, 1991) (*citing In re Barracuda Tank Corp.* (S/T TORREY CANYON), 281 F.Supp. 228 (S.D.N.Y.1968), *modified,* 409 F.2d 1013 (2d Cir.1969); *Chapalain Compagnie v. Standard Oil Company,* 467 F.Supp. 181 (N.D.Ill.1978).

In *Barracuda* Judge Metzner said that in contrast to the specific requirements specified by Congress in § 186, "the courts have always construed the terms 'owner' in § 183 very broadly in order to effectuate the Congressional intent" (citing cases). He continued:

> These cases have held such diverse parties as shareholders, mortgagees, prior vendors, life tenants, trustees and government agencies operating privately owned ships in wartime to be "owners" entitled to limit liability. The rule that has emerged from these cases appears to be that, if the petitioner may be held liable because of his ownership or control of the vessel, he can maintain a petition to limit his liability. 281 F.Supp. at 232.

The most recent Second Circuit authority is *Dick v. United States,* 671 F.2d 724 (2d Cir.1982), which arose out of an injury during a negligent rescue at sea by a privately owned Coast Guard auxiliary vessel. The majority of a divided panel held that for liability and limitation of liability purposes, Congress intended that the United States be treated as an owner pro hac vice of Coast Guard Auxiliary vessels which be-

came "public vessels" when assigned to Government service. 671 F.2d at 728. Judge Mansfield stated in dissent that the United States was not entitled to limitation since "the Coast Guard did not exercise any dominion or control" over the vessel, "which was at all times operated and controlled by her private owner." *Id.* at 729.

While American case law allows some flexibility in the definition of "owner" under § 183, the law of this country is significantly more restrictive than that established by the 1957 and 1976 Brussels International Conventions relating to the Limitation of Liability of Owners of Sea–Going Ships. As Rodriguez and Jaffe observe, *op cit. supra* at 9642:

> Both Conventions permit a broader class of parties to seek limitation than can do so pursuant to U.S. law. Under the 1957 Convention, all charterers, *managers*, and operators of seagoing vessels may limit as well as owners; and the 1976 Convention enlarged the categories of persons entitled to limit to include, among others, insurers and salvors. (emphasis added)

In the case at bar, the complaint does not sufficiently allege circumstances entitling Gleneagle to the standing of "owner" of the SURF CITY for limitation of liability purposes. Chesapeake is alleged to be the "owner" of the vessel. The only description given of Gleneagle is "manager of the vessel and employer of the crew." Gleneagle's responsibilities as "manager" are not further defined. "Employer of the crew" is not by itself sufficient. A contractor retained by a shipowner to man a vessel does not under the cases become an owner itself under § 183.

The cases cited by Gleneagle do not support its claim to be a shipowner entitled to limitation of liability. Gleneagle relies upon *Dick, supra; American Commercial Lines, supra; In re Barracuda Tanker Corp., supra;* and *Fink v. Paladini,* 279 U.S. 59, 63, 49 S.Ct. 255, 256, 73 L.Ed. 613 (1929). *Dick* turns upon the particular statutory scheme involving federal public vessels and the status of Coast Guard Auxiliaries; its facts are inapposite. As noted, *American Commercial Lines* conveyed limitation status upon both the corporate "owner" and "operator" of the vessels; but the decision does not describe the two corporations' relationships to themselves or to the vessels, and it appears that the "operator's" right to limit was not contested. *Barracuda* dealt with the murky world of major oil companies and their wholly owned subsidiary transportation companies. In *Barracuda* Judge Metzner acknowledged in the district court the contention that the corporate parent and time charterer, while not entitled to limit liability as a "charterer" under § 186, might still be regarded as a § 183 "owner" because of its "de facto dominion and control" over the vessel. 281 F.Supp. at 231. The Second Circuit, in its opinion remanding the case, did not squarely address that concept of ownership; and "[w]ith the settlement of the case, the proceedings were discontinued so that the riddle still remains unanswered." *Gilmore and Black, op cit. supra,* at 842. In any event, again the facts are inapposite.

*Fink v. Paladini* stated generally that the word "owner" in § 183 was "an untechnical word" which should be interpreted in a "liberal" way; but the Court held no more than that state law-created liability of stockholders in a corporation owning a vessel was subject to limitation of liability under the federal Limitation of Liability Act. "For this purpose no rational distinction can be taken between several persons owning shares in a vessel directly and making the same division by putting the title in a corporation and distributing the corporate stock." *Id.* at 62, 49 S.Ct. at 255. This case does not assist Gleneagle.

The complaint at bar falls far short of alleging that variety of responsibilities sufficient to confer upon the contractor in *Petition of United States* a status sufficient to invoke limitation of liability. But neither does the pleading exclude the possibility that a comparable arrangement existed between Chesapeake, the owner of SURF CITY, and Gleneagle.

In these circumstances, I grant the motion of Washington, a claimant in 90 Civ. 1772, to dismiss Gleneagle's complaint for

158

exoneration from or limitation of liability. I also grant the motion of McHugh plaintiff in 91 Civ. 3155, and strike Gleneagle's second affirmative defense.

However, I also grant leave to Gleneagle to file amended pleadings in both cases, setting forth, if it can do so consistent with Rule 11, Fed.R.Civ.P., circumstances sufficient to bring it within 46 U.S.C. App. § 183. Gleneagle may file and serve such amended pleadings within thirty (30) days of the date of this Opinion. If no amended pleadings are filed, claimants in 90 Civ. 1772 may submit an order on five (5) days' notice vacating the restraining order in the limitation action. I defer vacatur of the restraining order pending the possible filing of an amended complaint.

It is SO ORDERED.