In the Matter of the Complaint of CHES-APEAKE SHIPPING, INC. and Gleneagle Ship Management Co., Inc.

For exoneration from or Limitation of Liability.

Debra J. McHUGH, individually, and on behalf of her minor children, Stephanie J. McHugh, Kimberly N. McHugh and Ryan D. McHugh, and as Administratrix of the Estate of Steven McHugh, Plaintiffs,

v.

GLENEAGLE SHIP MANAGEMENT CO., INC., Defendant.

No. 90 Civ. 1772 (CSH).

United States District Court, S.D. New York.

Oct. 6, 1992.

Nourse & Bowles (Lawrence J. Bowles, of counsel), New York City, for plaintiffs in 90 Civ. 1772 and for defendant in 91 Civ. 3155.

Phillips Cappiello Kalbin Hoffman & Katz, New York City, Michael E. Shelton (Michael E. Shelton, of counsel), Houston, Tex., for Earl Washington, claimant in 90 Civ. 1772.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This Court's Memorandum Opinion and Order dated November 7, 1991, 778 F.Supp. 153, familiarity with which is assumed, granted the motions of certain claimants to dismiss the complaint of Gleneagle Ship Management Co., Inc. ("Gleneagle") for exoneration from or limitation of liability and to strike Gleneagle's affirmative defense in a related case asserting the limitation of liability statute. The litigation arises out of a casualty suffered by the M/V SURF CITY, resulting in death and injury to certain of the ship's officers and crew.

That Opinion also granted Gleneagle the right to file an amended pleading setting forth further allegations in support of its professed right to claim the benefits of the limitations of liability statute.

Gleneagle has filed and served an amended complaint in the lead case, 90 Civ. 1772. The amended complaint alleges at ¶ 5:

"At all material times, plaintiff Gleneagle managed and operated the **M/V SURF CITY**, employed her crew, handled and settled insurance, general and particular average, salvage and other claims in connection with said vessel, and provided and procured necessary services for said vessel, including maintenance, surveys, repairs, victuals and supplies, pursuant to the terms of a management agreement and a course of dealing between Chesapeake and Gleneagle. Gleneagle manned, victualed and navigated the **M/V SURF CITY** and is therefore an owner within the meaning of the Limitation of Liability Act, 46 U.S.C. [App.] §§ 183–189."

These allegations have been tested by discovery. Earl Washington, a claimant in the limitation proceeding, renews his motion to dismiss the amended complaint on the ground that Gleneagle lacks the standing to invoke the limitation of liability statute.

The record developed during discovery reveals the following. On June 1, 1987 Chesapeake Shipping, Inc.[1] ("Chesapeake") as "Owners" and Gleneagle as "Managers" entered into a Management Agreement covering a number of vessels, including the SURF CITY. While ¶ 4 of the Management Agreement required Gleneagle to furnish a wide array of vessel management services "if requested by the Owners," in point of fact Chesapeake requested very little of Gleneagle during the early days of the contractual relationship. The Management Agreement was accompanied by a "side letter" in which Chesapeake requested Gleneagle to provide the services of United States citizens as masters for each of the eleven vessels covered by the agreement. For that limited service Gleneagle received a basic monthly fee of $1,310 per ship. The side letter recited:

If and when requested, Gleneagle will provide any other services, within the scope to [sic] the Management Agreement as may be required by Chesapeake Shipping, Inc. The management fee for any such additional services will be negotiated at such time as they may be requested.

Between June 1; 1987 and April 25, 1988, this was the only service Gleneagle performed under the Management Agreement.

On April 25, 1988 the parties executed "Schedule No. One" to the Management Agreement, pursuant to which Gleneagle agreed to procure and provide United States licensed radio operators for the vessels covered by the agreement. For that additional service, Gleneagle's monthly fee was increased by $500 per vessel.

A far more significant expansion of Gleneagle's responsibilities took place when the parties executed Addendum No. 1 to the Management Agreement, signed by Chesapeake on March 27, 1989 and by Gleneagle on April 4, 1989. With respect to a number of vessels in the Chesapeake fleet, including the SURF CITY, Gleneagle took over the full management and operation of the vessels, including selecting, engaging and providing full complements of officers and crews, and performing all of the duties referred to in the Management Agreement which, prior to execution of the Addendum, Chesapeake had not requested of Gleneagle. This new arrangement came into effect with respect to the SURF CITY on April 15, 1989, the "Handover Date" specified in the addendum. The addendum increased Gleneagle's monthly management fee for the SURF CITY to $11,750. Pursuant to its increased obligations under the Management Agreement, Gleneagle entered into a collective bargaining agreement with the International Organization of Masters, Mates & Pilots. Further with respect to manning the vessels, ¶ 10 of Addendum No. 1 provided in part:

The Manager shall be deemed for all purposes to be the employer of the officers and crew of the Vessels. To the extent permitted by applicable law, Owner shall have no liability for personal injury claims relating to the Vessels. The Manager shall process all personal injury claims relating to the Vessels.

Reflecting this revised and expanded Management Agreement, Gleneagle maintained a staff of employees at Houston, Texas which included a port captain, port engineers, ships' purchasing agents, personnel agents, accounting and payroll employees, a crew P & I (protection and indemnity insurance) claims agent, and other management staff, who devoted their efforts to the Chesapeake fleet. The responsibilities falling upon Gleneagle included manning the vessels; victualing the vessels; providing for navigation, which involved procuring and providing deck, engine and cabin stores; maintenance and

---

1. Chesapeake is the registered owner of the SURF CITY. Its standing to claim limitation of liability is not challenged.

repairs for hull and machinery; providing spare parts, maintenance and repairs for communication and navigation equipment; arranging for United States Coast Guard and classification society (American Bureau of Shipping) technical surveys; and communicating with Chesapeake and the vessels' time charterers.

Gleneagle's managerial role was autonomous. At the beginning of each month it requested and received funds from Chesapeake to meet budgeted expenses. The accounts were reconciled and trial balances stated at the end of each month. Gleneagle's accounts for Chesapeake were audited by the latter's certified public accountants at the end of each fiscal year.

These arrangements were in effect when the SURF CITY suffered the casualty in suit in February 1990.

I agree with Gleneagle that the Management Agreement in effect at the time of the casualty cannot be distinguished from that involved in *In re Petition of United States*, 259 F.2d 608 (3rd Cir.1958), which contained comparable if not identical provisions. The Third Circuit reasoned that so broad a range of managerial responsibility "partakes of the nature of both charterer and owner pro hac vice, either status being sufficient to bring the contractor within the statute." *Id.* at 610. The Third Circuit also stressed the managing agent's potential liability stemming from its conduct, and the public policy underlying the limitation of liability statute. The court said of Mathiasen, the manager of the colliding vessel in *Petition of United States:*

> Mathiasen was the employer of the personnel whose alleged negligence in part at least is asserted as the cause of the collision. Also it had the obligation of procuring " * * * all personnel necessary to fill the complement of each tanker" and to man, equip and supply the Mission [the colliding vessel]. From that obligation it must follow that if the ship was unseaworthy, because she was not fully and properly manned, equipped and supplied, as charged, responsibility may well be ascribed to Mathiasen. A prime purpose of the limitation acts has been to promote the employment of vessels in commerce and the encouragement of persons engaged in the business of navigation. *American Car & Foundry Co. v. Brassert*, 1933, 289 U.S. 261, 263, 53 S.Ct. 618, 77 L.Ed. 1162; *Moore v. American Transportation Co.*, 1860, [65 U.S. 1] 24 How. 1, 39, 16 L.Ed. 674. "Mathiasen in this collision, as to third parties, had virtually the responsibility of the record owner. Under the theory and purpose of the statute Mathiasen should be afforded the same kind of protection against the possibility of the crushing loss which might arise as is given said owner." *Id.* at 610–11.

The fact that the vessel owner reimbursed Mathiasen "for its operational expense" did not deprive the manager of its right to limit liability, 259 F.2d at 609–10; nor does Chesapeake's obligation to reimburse Gleneagle have that effect in the case at bar.

I am unaware of any Second Circuit authority contrary to *Petition of United States* and the parties cite none. Its reasoning is persuasive.

The Third Circuit in *Petition of United States* construed Mathiasen's role under the contract as partaking "of the nature of both charterer and owner pro hac vice" and found it unnecessary to choose between the two, since either status justified the petition for limitation of liability. That two-pronged analysis may not be available in the case at bar. ¶ 2(b) of the original Management Agreement expressed the understanding of the parties as follows:

> It is understood and agreed that this Agreement is not and shall not be construed to be a demise or bareboat charter. The Managers shall be technical managers only whose authority to act shall be limited to that authority granted herein.

Addendum No. 1 provided at ¶ 3:

> The second sentence of Section 2(b) of the Agreement is hereby amended to read as follows:
>
>> "The Managers' authority to act shall be limited to the authority granted herein."

It is therefore open to claimant to argue that the parties continued in their refusal to characterize the Management Agreement as a charter, thereby depriving Gleneagle of the opportunity to invoke 46 U.S.C.App. § 186. The argument *contra* is that Gleneagle's expanded procurement responsibilities under the addendum bring the case within § 186. *See* the district court's opinion in *Petition of United States,* 155 F.Supp. 714, 717 (D.Del.1957), quoted by the Third Circuit at 259 F.2d at 610. I need not resolve the issue because in any event Gleneagle, just like Mathiasen in *Petition of United States,* "had virtually the responsibility of the record owner," and accordingly qualifies under 46 U.S.C.App. § 183.

Accordingly the motion of claimant Washington to dismiss Gleneagle's complaint for exoneration from or limitation of liability is denied.

It is SO ORDERED.