## THE MILWAUKEE.

District Court, E. D. Wisconsin.
Jan. 8, 1931.

Kremer, Branand & Hamer, of Chicago, Ill., and Bottum, Hudnall, Lecher, McNamara & Michael, of Milwaukee, Wis., for petitioner.

Stover & Stover, of Milwaukee, Wis., Bresnahan & Groefsema, of Detroit, Mich., and Corwin, Norcross & Cook, of Grand Rapids, Mich., for claimants.

GEIGER, District Judge.

Upon the trial, these allegations of the petition were put in issue: (1) Whether the petitioner was the owner of the car ferry. (2) The privity or knowledge of the petitioner as owner respecting the causes of disaster and the ensuing loss or damage.

At the conclusion of the testimony and oral argument, the court informally expressed its opinion that upon the second of the foregoing issues the petitioner had made out its case; that is to say, the fault or other cause of the disaster was not, upon the evidence, within the petitioner's privity or knowledge.

Upon the first issue these preliminary observations may be made: Whatever discussion may be indulged as to what is included and what may be excluded in defining the term "owner" as used in the limitation act and rules, the statute, by including "charterer," and the adjudications in cases arising under the law, disclose liberality toward scope and applicability. The judicial history of the act demonstrates that the question of ownership has been tested out, not by rigid inquiry respecting the muniments of title showing ownership to be absolute and unreserved, nor upon the mere form of transactions involving an interest in a vessel. Rather is the inquiry directed to the relationship of one asserting himself, or charged to be, the owner with a view of ascertaining whether the relationship, whatever it is found to be, might reasonably furnish ground upon which a claim of liability for damage could be asserted. Therefore, since by the statute a charterer or one having an analogous situation may be included within the limitation privilege, it does not follow that one having another relation in respect of the same vessel, that is to say, one making a claim of "ownership" or chargeable with it, is excluded merely because a charterer may be included. The inclusion of the one does not exclude, necessarily, the other. It is my judgment that the summary of the proofs, upon which the respective contentions are made in this proceeding, may readily call for applying the guide indicated in Flink v. Paladini, 279 U. S. 59, 49 S. Ct. 255, 73 L. Ed. 613. That case seems to indicate that whether or not one is to be deemed an "owner" depends largely upon the possibility that he may be subjected to a liability which ordinarily is assertable against one having, or claiming to have, proprietorship or dominion over the subject of the proceeding. It negatives the thought that "owner" of, or to "own" a vessel means the situs of full title, interest, or dominion, and that nothing else is within the definition of the right or the range of the statute.

A summary of the contentions and of the supporting proofs in this matter may be thus made:

On behalf of the petitioning car ferry company, (1) that it is a Wisconsin corporation and became the owner of the car ferry in question in about 1906; (2) that unquestionably it owned and operated the car ferry down to the execution of the memorandum agreement of sale, dated November 15, 1928, though executed on December 13, 1928; (3) the continued corporate existence of the petitioner with officers and agents, which latter were recognized as and claimed to be officers and agents of the petitioner in charge of operation of the ferry, also continued enrollment and registration of the vessel in the name and on behalf of the petitioner.

With this prima facie proof produced in support of the allegations of ownership, the claimants or respondents offered as countervailing proof:

(1) The agreement of sale entered into by the petitioner, dated as noted in 2 supra, with Grand Trunk Western Railroad Company, a Michigan corporation, containing as preambles: (a) The Grand Trunk's ownership of the capital stock of petitioner. (b) The petitioner's ownership of four car ferries (including the subject of the petition) and the ownership of docks and railway facilities in the city of Milwaukee used in the car ferry service. (c) The indebtedness of the car ferry company to the International Bridge Company which the Canadian National Railways Company has agreed to procure and deliver to Grand Trunk for cancellation assumed and to be paid by Grand Trunk out of proposed securities issues as and when authorized by the Interstate Commerce Commission; also a further debt to Grand Trunk for capital advances likewise to be paid out of securities issues when authorized. (d) That there is "now no good reason for continuing the separate corporate existence of the car ferry and it has been determined to transfer to the Grand Trunk all its facilities," the latter company to continue to operate.

The memorandum proceeds, "that in consideration of the premises, the parties agree as follows":

"1. The Car Ferry Company, for the considerations hereinafter mentioned, hereby sells, assigns and transfers to the Grand Trunk all its physical and other assets, including said car ferries, docks and railway facilities at Milwaukee, also including its leaseholds, bills and accounts receivable, all effective as of the close of business December 31, 1928, and the Grand Trunk agrees to, and hereby does, purchase the same, and to assume and pay or perform all the debts, liabilities and duties of the Car Ferry Company; it being intended that after such sale, assignment and transfer, the Grand Trunk shall itself directly operate said facilities, and that the Car Ferry Company shall be wound-up.

"2. It is understood and agreed that any further or other instruments to effectuate the purposes herein defined, particularly any instruments necessary to effect the formal transfer and re-documentation of said car ferries, shall be executed by the parties as may be proper and necessary.

"3. It is understood and agreed that this agreement and all provisions hereof are subject to the approval of the Interstate Commerce Commission as to all or such parts thereof as may be within the jurisdiction of that Commission, and to the approval of any and all United States public officials or bodies with respect to the transfer and redocumentation of said car ferries within their jurisdiction."

(2) The claimants, in addition, offered in evidence reports of the car ferry company and of the Grand Trunk Western Railway Company to the Tax and Railroad Commissions of Wisconsin, to the Railroad Commission of Michigan, and the Interstate Commerce Commission, for the purpose of establishing the declarations or admissions, if they may be so termed, of the two companies, in substance that during the course of the year 1929, the petitioning car ferry company transacted no business, did not own nor operate the car ferry company. The question may arise respecting the competency of such declarations or admissions by officers and agents, made after the happening of the disaster in question, especially when it is sought thereby to overcome other proofs relating to a situation created anterior to that time and which may well raise a question of law whether by such latter facts the petitioner was still within the range of the limitation act. To rebut such evidence, the petitioner called its secretary and an accountant, who, it is true, were also in official relationship with the purchasing company, Grand Trunk Western Railroad Company, from whom the facts as they are now before the court upon this particular matter may be thus summarized:

That, at or about the time when the agreement of November 15, 1928, was made, there was under way a general plan of consolidation and unification of railroads, transportation agencies and facilities under the name of Grand Trunk Western Railroad Company. The plan was to include the Detroit, Milwaukee & Grand Haven Railroad Company which then and theretofore had been the owner of the capital stock of the petitioning car ferry company; and it included the plan to merge the car ferry company and its car ferry service. Obviously, the memorandum of November 15th was a part of the plan. Equally true is it that at that time it was either necessary, or conceived to be necessary in carrying out the plan, that action by the Interstate Commerce Commission, as noted

in the agreement, was indispensable. In due time proceedings were instituted before the latter Commission, apparently under the title "Unification and Securities of Grand Trunk Western Railroad Company, Finance Docket No. 73,201." The Commerce Commission made its report November 8, 1929, approximately two weeks after the loss of the car ferry. From and after the institution of the proceedings before the Interstate Commerce Commission, the actual operation of the car ferries, that is, their running upon trips and carrying cargoes, was continued as theretofore; the books of account kept the affairs of the car ferry service separate and distinct, all apparently upon the conception that the pending proceedings before the Interstate Commerce Commission precluded actual physical unification of rights and properties of the different units of the proposed plan. The consideration passing to the petitioning company plainly could not have been delivered or passed until the plan had been approved. Therefore, after the determination of the Interstate Commerce Commission, when it was assumed that the consideration would pass, the books, showing the separate operations during the preceding year, were rewritten, to show what theretofore could not have been shown, viz. the acquisition by the unified company of whatever had been thus held in suspension. Upon such bases, the reports of the two companies were then made in the months of March and April, 1930. If, therefore, it be assumed that the reports thus offered in evidence were competent, it was and is believed that the proffered explanation of why these reports were made was equally competent, certainly for the purpose of showing that the memorandum of November 15, 1928, was part of a plan which for more than a year remained conditional or executory, as between the two parties. In this state of the proofs, it is a matter of some significance that, upon the institution of the present proceedings, claimants who appeared unqualifiedly admitted the truth of the petitioner's allegation respecting ownership; and by some detail of allegation charged it with a considerable variety of fault, or guilty participation in fault, which caused the disaster. Subsequently, some of the claimants amended their answers by denying upon information and belief the petitioner's allegation of "sole ownership." Answers of other claimants still contain the admission of ownership. It is probable that a considerable number who have suffered by the disaster have not, nor has any one on their behalf, made claim.

Upon the trial of the case, claimants introduced testimony upon both issues, and it may appear anomalous in the one pleading to deny ownership as a basis of liability, and at the same time to assert liability. But it is unnecessary to determine whether under the statute or the admiralty rules this is permissible, for I am satisfied that, upon the proofs and the application of the test hereinbefore noted, the petitioner has brought itself within the range of the statute and the rules; that is to say, the petitioner has shown a relationship to the vessel and its operation which, on its own showing, furnishes ground for asserting either a qualified ownership, or some substantial legal interest, pending the consummation of the plan of unification. As indicated upon oral argument, if the case were not before the court under the limitation statute, but upon an ordinary proceeding charging petitioner as owner of and liable for the loss, it would be difficult, upon the facts now before the court, to evade or avoid claim of ownership. True, a like claim might be made against the railway company. But, when dealing with the narrow question of ownership, interpreting that term to include a variety of legal interest, the petitioner, if denying such interest and relationship, would find it difficult to countervail the very evidence now brought forward by it, viz., that the declarations of want of interest made on its behalf after the disaster, were in fact made to carry out, as an accounting proposition, the executory plan of unification; that the books prior to the Commission's decision showed the facts as they transpired and were respected between petitioner and the railroad company.

Upon consideration of this evidence, it was insisted by the claimants that, although the memorandum agreement contemplated recourse to the Interstate Commerce Commission for approval, the Commission had no jurisdiction in respect of any matter that would effect the devolution of title. It is very evident, however, that the parties to the agreement and proposed merger plan conceived the necessity of submitting the financing of the plan—and that concerned the consideration of the agreement—to the Commission. In my judgment, it becomes quite immaterial whether, upon certain phases of the agreement or the plan, it was necessary to invoke the jurisdiction of the Commission. The proof shows that the parties regarded the plan as executory and as continuing to be executory until the Commission had determined the matters submitted to it. The question is not whether a title, speaking in

strictness, remained in abeyance, but whether, notwithstanding words of present purchase and sale, the parties considered the whole arrangement as executory and as necessarily awaiting the doing of some future act upon which, it may well be said, it was all conditional.

I am satisfied that the petitioner is entitled to the benefit of the limitation act; and a decree may be entered accordingly.