In the Matter of the Complaint of BAR-RACUDA TANKER CORPORATION as Owner of the S/T TORREY CAN-YON and Union Oil Company of California for Exoneration from or Limitation of Liability.

No. 67 Civ. 3621.

United States District Court
S. D. New York.
March 1, 1968.

Symmers, Fish & Warner, and Dorsey, Burke & Griffin, New York City, for plaintiffs, William Garth Symmers, New York City, of counsel.

Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for claimants, United Kingdom of Great Britain and Northern Ireland, Republic of France, States of Guernsey, Edwin Longcope, New York City, of counsel.

METZNER, District Judge.

This proceeding arises in the aftermath of the much-publicized stranding and sinking of the tanker Torrey Canyon off the southwest coast of England in March 1967. The tanker had departed from the Persian Gulf, bound for Milford Haven, Wales, with a cargo of 119,-328 tons of crude oil. The stranded ship was eventually bombed and sunk by the Royal Air Force, causing the complete loss of both ship and cargo, but not before a substantial amount of crude oil had been discharged from her ruptured tanks into the waters of the Atlantic. The resulting pollution and damage to beaches and shorelines on both sides of the English Channel will long be remembered.

At the time of the stranding, the registered owner of the Torrey Canyon was Barracuda Tanker Corporation (Barracuda), but the ship was under a 20-year time charter to the Union Oil Company of California (Union). The crude oil she was carrying had been shipped by British Petroleum Trading Ltd., under a voyage charter from Union, with freight payable at destination. Barracuda and Union jointly instituted this limitation

of liability proceeding. 46 U.S.C. §§ 183–189. Pursuant to the Federal Rules of Civil Procedure, Supplementary Rule F(3), this court on September 22, 1967 entered an ex parte order enjoining the prosecution of all independent actions and proceedings in the United States, its territories and possessions, providing for issuance of notice to potential claimants, and approving plaintiffs' interim stipulation for the value of their remaining interest in the vessel and its pending freight. The stipulated value was only $50, representing a lone salvaged lifeboat.

The United Kingdom of Great Britain and Northern Ireland, the Republic of France, and the States of Guernsey duly filed claims for damages and answers in this proceeding, but only against the plaintiff Union. They filed no claims or answers against the plaintiff Barracuda, whom they had previously sued in separate proceedings instituted in Singapore and Bermuda.

The claimants have made two motions to modify the order of September 22, 1967. By a motion to strike the portion of the order enjoining independent proceedings against Union, they challenge Union's right to maintain a limitation of liability proceeding. Their second motion attacks the sufficiency of the stipulated value of Union's remaining interest in the Torrey Canyon. Each motion will be considered separately.

## I

■ The Limitation of Liability Act was passed over a century ago in order to encourage the development of the American shipping industry, by assuring that the maritime entrepreneur's risks would not exceed the amount of his investment. Flink v. Paladini, 279 U.S. 59, 49 S.Ct. 255, 73 L.Ed. 613 (1929); Hartford Acc. & Indem. Co. v. Southern Pacific Co., 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612 (1927). See Note, Shipowner's Limitation of Liability, 3 Colum. J.L. & Soc.Probs. 105 (1967). As the reasons for enacting these measures wane, however, the courts have tended

to view the scope of the limitation provisions restrictively. E. g., In re Petition of The Dodge, Inc., 282 F.2d 86, 89 (2d Cir. 1960); In re Petition of United States Dredging Corp., 264 F.2d 339, 341 (2d Cir. 1959). See Gilmore & Black, The Law of Admiralty 667 (1957); Comment, 10 Vill.L.Rev. 721 (1965). However, this change in judicial attitudes has not affected the liberal approach which has always been manifest in determining who is entitled to maintain a limitation proceeding. E. g., Coryell v. Phipps, 317 U.S. 406, 411, 63 S.Ct. 291, 87 L.Ed. 363 (1943). § 183 of the act grants the right to limit liability to "the *owner* of any vessel, whether American of foreign." § 186 extends the right of limitation to "the *charterer* of any vessel, in case he shall man, victual, and navigate such vessel at his own expense, or by his own procurement."

■ Union's complaint in this proceeding did not include a copy of its charter party agreement with Barracuda, but it did aver that union was the "charterer" of the Torrey Canyon, and claimed the benefit of § 186. These allegations are sufficient to state a claim for relief under § 186, according to *modern* concepts of notice pleading. The 40-year old case relied upon by the claimants, E. I. du Pont De Nemours & Co. v. Bentley, 19 F.2d 354 (2d Cir. 1927), is no longer persuasive. Nevertheless, claimants' motion may be treated as one for summary judgment based on undisputed facts rather than one which merely attacks the sufficiency of the complaint. Fed.R.Civ.P. 12(b). The first real question which presents itself, therefore, is whether Union is in fact the kind of charterer referred to in § 186.

■ The claimants have annexed to their claims a copy of the charter party and point out provisions therein which, they contend, conclusively demonstrate that Union did not "man, victual and navigate" the vessel at its own expense or procurement. Article 3 of the charter party provides that the master, officers and crew of the vessel shall remain the servants of the owner, Barracuda, "navi-

gating and working the Vessel on behalf of Owner." Article 5 recites that Barracuda shall provide and pay for all ship's provisions and stores, and the wages of the crew. Article 8 states that Barracuda, as owner, "shall have the benefit of all limitations of, and exemptions from, liability accorded to owners or chartered owners of vessels by any statute or rule of law * * *." Article 19, finally, declares that "Nothing herein contained shall be construed as creating a demise of the Vessel to Charterer."

■ Taken alone, these provisions appear to provide explicitly for the manning, victualing and navigating of the vessel by the owner, Barracuda. Indeed, they are the kind of provisions which distinguish a time charter such as this one from a bareboat or demise charter in which complete control of the vessel is yielded to the charterer. It seems clear that, in couching § 186 in the terms chosen, Congress intended in the usual case to accord the right to limit liability to the bareboat charterer, while denying that right to the time charterer. Gilmore & Black, supra at 673; 3 Benedict, Admiralty 416 (6th ed. 1940).

Union attempts to avoid the import of these provisions in the charter party by reliance on additional provisions of that agreement. The amount of charter hire payable by Union to Barracuda under the agreement was variable, depending directly upon the costs and expenses incurred by Barracuda for such items as wages, provisions and stores, maintenance and taxes. Because the financial responsibility for all of these items ultimately fell upon Union, it argues that in reality it was at Union's expense or by its procurement that the vessel was manned, victualed and navigated. The courts have rejected the argument that ultimate responsibility for payment was the measuring rod. Rather, they look to the contract to determine who, in the first instance, is required to discharge the responsibility. In re Petition of United States, 259 F.2d 608 (3d Cir. 1958); The James Horan, 10 F.Supp. 28 (D.N.J.), aff'd 78 F.2d 870 (3d Cir.

1935). Union also points out that it reserved, *inter alia,* the rights to demand discharge of ship's officers with whom it was dissatisfied, to make contracts binding on the vessel for pilotage, towing and stevedoring, to sue and defend suits in Barracuda's name on behalf of the ship, and to fly its house flag and affix its company colors or insignia to the vessel's stack. But these additional accoutrements of ownership, like Union's ultimate bearing of the financial burden, do not detract from the clear import of the charter party's terms, which place squarely upon Barracuda the responsibility for procuring the goods and services needed to man, victual and navigate the ship. Having knowingly agreed to such a contract, Union cannot now be heard to argue that the usual legal consequences of the terms employed should not attach. I hold that Union was not the kind of charterer comprehended by § 186.

Union argues vigorously that, even if it cannot be considered a "charterer" entitled to limit under § 186, it may be held to be an "owner" *pro hac vice.* In addition to the indicia of ownership already referred to, Union points out numerous other factors, some contained in the charter party agreement, others dependent upon evidentiary proof, which tend to show that its relationship to the Torrey Canyon was one of de facto dominion and control. It insists that its status as an "owner" is thus a question of fact which cannot be determined by a motion such as this.

The transaction between Barracuda and Union is similar to the "sale-leaseback" arrangements commonly used in real estate transactions. The ultimate user of the facility builds it to its own specification, and then recoups its investment by sale to a second party with a leaseback arrangement for a long-term period. The rental paid guarantees a good return to the purchaser and is fully tax deductible to the seller. This is more advantageous to the latter than the usual depreciation and expenditures allowed an owner. Furthermore, the seller possesses what it wants without the burdens of

ownership. To achieve this purpose, the seller must divest itself of all indicia of ownership. Union now argues that despite all that it has done to avoid ownership it is, in fact, the owner.

If this were all the court had to consider, it might seem that the very fact that Union is an actual charterer under a written charter party would preclude its right to effect limitation. Congress has dealt with charterers in this regard with specificity under § 186, and seemingly did not intend to make limitation available to a charterer such as Union.

On the other hand, the courts have always construed the term "owner" in § 183 very broadly, in order to effectuate the congressional intent. Flink v. Paladini, 279 U.S. 59, 49 S.Ct. 255, 73 L.Ed. 613 (1929); Standard Oil Co. of New Jersey v. Southern Pacific Co., 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890 (1925); Admiral Towing Co. v. Woolen, 290 F.2d 641, 645 (9th Cir. 1961); Austerberry v. United States, 169 F.2d 583, 593 (6th Cir. 1948); In re The Trojan, 167 F.Supp. 576 (N.D.Cal.1958); In re Petition of Colonial Trust Co., 124 F. Supp. 73 (D.Conn.1954); The Milwaukee, 48 F.2d 842 (E.D.Wis.1931). These cases have held such diverse parties as shareholders, mortgagees, prior vendors, life tenants, trustees and government agencies operating privately owned ships in wartime to be "owners" entitled to limit liability. The rule that has emerged from these cases appears to be that, if the petitioner may be held liable because of his ownership or control of the vessel, he can maintain a petition to limit his liability. See Note, 14 W.Res. L.Rev. 361, 369 (1963). Whether this rule should be extended to the case at bar presents a difficult question.

The moving claimants may have recognized this, for their claims against Union are very carefully worded so as to avoid allegations that Union's liability flows from its "ownership" or "control" of the Torrey Canyon. Nevertheless, analysis of their claims leads to the inescapable conclusion that, if they are successful in holding Union accountable, it will probably be because Union was "owner" of the vessel as that term has been construed in the past. Surely I cannot hold, on the basis of what is before me, that Union can never be held liable as an "owner." Therefore, any determination of Union's ability to limit its liability must await the trial of this action. Even if Union should ultimately fail to establish its right to limit, this court may retain jurisdiction to dispose of the "concourse" of claims asserted against it. Hartford Acc. & Indem. Co. v. Southern Pacific Co., 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612 (1927).

## II

Claimants' second motion seeks an order pursuant to Fed.R.Civ.P. Supplemental Rule F(7), directing Union to proceed forthwith with an appraisal of the value of its interest in the Torrey Canyon and her freight pending as of the termination of the voyage, and striking from the September 22, 1967 order the approval of the $50 stipulation of value. The motion was made with the understanding that it would be considered only if the first motion was denied. With an interim limitation fund of a scant $50 to satisfy claims totaling millions of dollars, the claimants understandably desire to increase that amount as far as possible.

§ 183 of the Limitation Act states that the amount of the owner's liability shall not exceed "the amount or value of the interest of such owner in such vessel, and her freight then pending." Claimants do not dispute the allegation that, except for the $48 lifeboat, nothing remained of the Torrey Canyon herself after she was sunk by RAF bombers. Under the terms of the voyage charter party, there was no freight due Union at the time of the sinking.

The claimants contend that the value of the "pending freight" must include any moneys due and owing from Union to Barracuda as charter hire. The term "freight" has been broadly construed to encompass all earnings of the voy-

age, La Bourgogne, 210 U.S. 95, 136, 28 S.Ct. 664, 52 L.Ed. 973 (1908), including payments due to the shipowner from a charterer for hire of the vessel. The C. F. Coughlin, 25 F.Supp. 649 (W.D.N.Y.1938); The Giles Loring, 48 F. 463, 473 (D.Me.1890). Thus, if any charter hire payments were due or paid by Union to Barracuda for the period of this voyage, they would have to be included in the valuation of Barracuda's interest in the vessel and her pending freight. However, these claimants, having chosen to file claims only against Union and voluntarily to forego their right to claim against Barracuda, now have no standing to object to the sufficiency of Barracuda's stipulation of value. Furthermore, the charter hire due from Union to Barracuda is not part of Union's interest in the vessel or her freight.

Both of the claimants' motions are denied. So ordered.