**Jacob DICK, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**Cal. No. 69, Docket 81–6076.**

United States Court of Appeals, Second Circuit.

Argued Sept. 10, 1981.
Decided Feb. 4, 1982.

Michael Kimmel, Dept. of Justice, Washington, D. C. (Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., and Edward R. Korman, U. S. Atty., Brooklyn, N. Y. on the Brief), for defendant-appellant.

Harvey Goldstein, New York City (Fuchsberg & Fuchsberg, New York City, on the Brief), for plaintiff-appellee.

Before LUMBARD, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

In *P. Dougherty Co. v. United States*, 207 F.2d 626, 633–37 (3rd Cir. 1953), *cert. denied*, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1068 (1954), the Third Circuit held that the United States was not liable for damages resulting from the negligence of the Coast Guard during a volunteer rescue operation. Although the Good Samaritan aspect of this holding has a certain appeal, the decision has not been widely followed. *See, e.g., United States v. Sandra & Dennis Fishing Corp.*, 372 F.2d 189, 197 (1st Cir.), *cert. denied*, 389 U.S. 836, 88 S.Ct. 48, 19 L.Ed.2d 98 (1967). In the instant case, which involves a claim for personal injuries resulting in part from the negligent rescue efforts of a volunteer Coast Guard Auxiliary boat, the Government argues only that it should be able to limit its liability to the value of the salving vessel pursuant to 46 U.S.C. §§ 789 and 183. Finding merit in this argument, we reverse that portion of the judgment of the United States District Court for the Eastern District of New York, Sifton, J., which denied the Government's petition for limitation.

On July 18, 1971, the pleasure craft *Escape II* drifted onto a shoal on the northern side of the State Boat Channel off Oyster Bay, Long Island while trying to assist a smaller runabout that was having engine trouble and had caught fire. Plaintiff was a passenger on the *Escape*.

Two vessels came in response to the *Escape's* call for help. One was a Nassau County police boat. The other was a Coast Guard Auxiliary vessel, the *Galaxy*, a 28-foot cabin cruiser owned and operated by one Jerry Bieder. A volunteer member of the United States Coast Guard Auxiliary, Bieder had previously agreed to make his boat available to the Coast Guard for safety patrol. On the afternoon of July 18, Bieder received a radio message from the Short Beach Coast Guard Station that a boat was on fire. When Bieder arrived, he found that the Nassau County police boat was taking care of the burning runabout, but that the *Escape* was in need of assistance.

Bieder towed the *Escape* back into the channel, but, in the process, negligently towed it into a channel marker. In the collision, plaintiff fell to the deck and injured his back. He sued to recover damages resulting from that injury.

The district court found that Bieder was 65% at fault in towing the *Escape* into the channel marker and that plaintiff was 35% at fault in failing to brace himself. The court found that plaintiff suffered total damages of $58,201.45, which it reduced by 35%. An amended final judgment in the amount of $37,830.94 was entered against the United States alone. The district court denied the petition of the United States to limit its liability to the value of the *Galaxy*, which was approximately $8,000 at the time of the accident.

The United States Coast Guard Auxiliary is a volunteer organization which assists the Coast Guard in educating and protecting the boating public. 14 U.S.C. §§ 821, 822. Auxiliary members who own boats may place them at the disposal of the Coast Guard for its use in carrying out these functions, 14 U.S.C. § 826, and that is what occurred in this case. Any such boat, while assigned to authorized Coast Guard duty, is deemed to be a public vessel of the United States, and, in connection with the processing of admiralty damage claims against the United States, 14 U.S.C. § 646, is deemed to be a vessel of the Coast Guard, 14 U.S.C. § 827. The Government undertakes to pay the necessary expenses of operation while the boat is in its service, including fuel, oil, power, water, supplies, provisions, replacement or repair of equipment, and damage to the boat. 14 U.S.C. § 830.

Pertinent provisions of the Public Vessels Act, 46 U.S.C. §§ 781–790, and the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, make the United States solely liable for the negligent operation of a boat while it is being operated as a public vessel. *Carter v. American Export Isbrandtsen Lines, Inc.*, 411 F.2d 1185 (2d Cir. 1969). However, the United States is entitled to all limitations of liability accorded by law to the "owners, charterers, operators or agents of vessels", 46 U.S.C. § 789, which, in the case of an owner, limits his exposure to the value of his interest in the vessel and its freight then pending, 46 U.S.C. § 183. For limitation of liability purposes, we believe that the United States should be treated as the owner *pro hac vice* of the public vessel whose rescue operations led to this litigation.

■ Through successive enactments beginning with the Shipping Act of 1916, Pub. L.No. 64–260, 39 Stat. 728 (current version at 46 U.S.C. §§ 801–842), Congress has eased progressively the restrictions against private recovery for governmental maritime torts. *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 170–81, 96 S.Ct. 1319, 1323–29, 47 L.Ed.2d 653 (1976). Congress has clearly manifested its intent, however, that all maritime tort claims against the Government be sued in admiralty rather than under the Federal Tort Claims Act. *Id.* at 176 n.14, 96 S.Ct. at 1326 n.14; *Roberts v. United States*, 498 F.2d 520, 525–26 (9th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). This means that the limitation of liability provisions of the Suits in Admiralty Act and the Public Vessels Act, if otherwise applicable to the facts of a particular case, set the outside limits of a plaintiff's recovery.

■ The Secretaries of the Air Force, the Army, the Navy, and the Treasury are given authority in various amounts to settle

claims for damage caused by vessels in their respective services. 10 U.S.C. §§ 9802, 4802, 7623; 14 U.S.C. § 646. This settlement authority is intended to be "predicated strictly on legal liability" and is "applicable only in a case where court action could be brought and maintained." *See* Letter from John H. Chaffee, Secretary of the Navy, to Hon. Carl Albert, Speaker of the House of Representatives (May 11, 1971), *reprinted in* [1972] U.S.Code Cong. & Ad. News 3138, 3140.

In determining the "legal liability" of the Government for a Coast Guard Auxiliary vessel assigned to Coast Guard duty, the Secretary of the Treasury must treat the vessel as a "public vessel of the United States" and a "vessel of the Coast Guard". 14 U.S.C. § 827. It seems unlikely that Congress intended that such a public vessel be considered a Coast Guard vessel for settlement purposes but a privately owned vessel in the event of litigation. The merger of the personality of a public vessel with that of the sovereign, *The Western Maid*, 257 U.S. 419, 433, 42 S.Ct. 159, 161, 66 L.Ed. 299 (1922), should not hinge upon whether the claim against the sovereign is settled or tried.

The Coast Guard Auxiliary was created by the Coast Guard Auxiliary and Reserve Act of 1941, Pub.L.No. 77-8, 55 Stat. 9 (current version at 14 U.S.C. §§ 751–832). On January 28, 1941, Rear Admiral Waesche, Commandant of the Coast Guard, testified before the House of Representatives' Committee on Merchant Marine and Fisheries in support of the 1941 bill. Speaking of section 6 of the proposed bill, now in substance 14 U.S.C. § 826, Admiral Waesche said that it would "permit us to bring into the Coast Guard, motor boats and yachts with their owners and crews and to use the vessel intact for helping us to carry out the duties of the Service." He testified further, "Under this law, or this bill, if it becomes a law, we will bring into active service in the Coast Guard various boats where we need boat equipment, and will bring into the service, with a motor boat, its crew." *Establishment, Administration, and Maintenance of a Coast Guard Auxiliary and a Coast Guard Reserve: Hearings on H.R. 562 Before the House Comm. on Merchant Marine and Fisheries,* 77th Cong., 1st Sess. 10 (1941).

The report of the Senate Committee on Commerce which recommended passage of the 1941 bill said of section 7, now 14 U.S.C. § 827, that any Auxiliary member's boat while on Coast Guard assignment will be "a Coast Guard vessel within the meaning of the act relating to collisions of Coast Guard vessels. . . ." S.Rep.No. 31, 77th Cong., 1st Sess. 4. We think it unlikely that Congress intended that the United States assume unlimited liability for damages caused by these "Coast Guard vessels" when its liability for damages caused by regular "Coast Guard vessels" is limited. *See United States v. Sandra & Dennis Fishing Corp., supra,* 372 F.2d at 198–99.

█ The term "owner", as used in limitation of liability statutes, is an "untechnical word" which should be interpreted in a "liberal way". *Flink v. Paladini,* 279 U.S. 59, 63, 49 S.Ct. 255, 256, 73 L.Ed. 613 (1929). As a general rule, one who is subjected to a shipowner's liability because of his exercise of dominion over a vessel should be able to limit his liability to that of an owner. *Admiral Towing Co. v. Woolen,* 290 F.2d 641, 644–46 (9th Cir. 1961); *In re Petition of United States,* 259 F.2d 608, 610 (3d Cir. 1958); *Complaint of B. F. T. No. Two Corp.,* 433 F.Supp. 854, 871–73 (E.D.Pa.1977); *The Milwaukee,* 48 F.2d 842, 842 (E.D.Wis.1931). When Congress passed the Coast Guard Auxiliary and Reserve Act, it surely was aware that the Public Vessels Act was "[a]n Act authorizing suits against the United States in admiralty for damage caused by and salvage service rendered to public vessels belonging to the United States." Pub.L.No. 68–546, § 1, 43 Stat. 1112 (1925). The Public Vessels Act authorized admiralty libels in personam to be brought against the United States "for damages caused by a public vessel of the United States", *id.,* at the same time "conferring on the United States all exemptions and limitations of liability accorded by law to owners of private

vessels." *Canadian Aviator Ltd. v. United States*, 324 U.S. 215, 222, 65 S.Ct. 639, 643, 89 L.Ed. 901 (1945). Viewing the language of the Coast Guard Auxiliary and Reserve Act in the light of this historical background, we conclude that, for liability purposes, Congress intended the United States to be treated as owner *pro hac vice* of Coast Guard Auxiliary boats, which become "public vessels" when assigned to Government service. Accordingly, we reverse that portion of the amended judgment dated January 29, 1981, which dismissed the petition of the United States to limit its liability to the value of the Coast Guard Auxiliary boat *Galaxy* and remand to the district court for further proceedings consistent with this opinion.

MANSFIELD, Circuit Judge (dissenting):

I respectfully dissent. In my view the majority has engaged in judicial legislation to reach a result which it apparently believes to be fair but which is contrary to the plain and unequivocal meaning of the governing statutes. The effect is to invade Congress' jurisdiction.

If Congress, in enacting the Public Vessels Act, 46 U.S.C. §§ 781–790, had wanted to extend the provisions of the Limited Liability Act, 46 U.S.C. §§ 181 *et seq.*, to all public vessels, including one "deemed to be a public vessel" by 14 U.S.C. § 827, it could easily have done so. Instead, it restricted the scope of the government's limitation of liability to that made available by law to "owners, charterers, operators or agents of vessels," 46 U.S.C. § 789. The purpose was to put the government on the same footing as a private party. A private party which is not the owner or demise charterer of the ship at fault may not avail itself of the shipowner's limited liability provided by 46 U.S.C. §§ 181, *et seq. The Severance*, 152 F.2d 916 (4th Cir. 1945), *cert. denied*, 328 U.S. 853, 66 S.Ct. 1344, 90 L.Ed. 1626 (1946). The fact that the boat was deemed by statute to be a "public vessel" did not, absent ownership, or chartering by the government, permit the United States to claim limitation of liability. *Austerberry v. United States*, 169 F.2d 583, 593 (6th Cir. 1948).

Although the Galaxy was "deemed to be a public vessel" while operated by the Coast Guard Auxiliary, 14 U.S.C. § 827, thereby subjecting the United States to liability for damages caused by its negligence, 46 U.S.C. §§ 781–790, it was not at any time owned or chartered by the United States Coast Guard or by any other branch or agency of the government. It was at all times owned and operated by Jerry Bieder, a private person.

The Coast Guard's relationship to the Galaxy was that of a party who had arranged for the owner as a volunteer to operate his boat temporarily for its assistance. Mr. Bieder, as owner-Auxiliarist, remained in command. This is confirmed by Ch. III, Part 2, of the Coast Guard Auxiliary Manual, CG–305 of 1968, which provides:

"In complying with such directions the Auxiliarist-master has the sole responsibility for the safety of his vessel and of the crew. If in his considered judgment the directed operation is not within the capabilities of his vessel, or if he concludes that such movement would hazard his vessel, he may decline the direction. The Coast Guard does not possess authority to take over command of the vessel or to compel the Auxiliarist to comply with his request.... Unless the orders specifically designate that the Auxiliary facility vessel shall be in charge and in command of Coast Guard personnel, the owner-Auxiliarist (or such other Auxiliarist designated by competent orders) shall be in charge and in command of the vessel (Master), and as such he has the sole responsibility for its operations."

Although the Coast Guard does reimburse the owner pursuant to 14 U.S.C. § 830 for "actual necessary traveling expense and subsistence," the Coast Guard does not interpret this as giving it the control of a demise charterer. The Manual (cited above) states:

"The purpose of a formal written order to a member of the Auxiliary is not primarily to secure specific action but to cover reasonable expenses inherent to execution of the order, and to provide a reason-

able financial protection to a volunteer assisting the Coast Guard.... The assignment of an Auxiliarist to any duty should be predicated upon a genuine and proper need and, considering the voluntary and non-military nature of the organization, such assignment should not be outside the capabilities normal to a voluntary amateur or outside the purely civil functions of the service. *A member is not obligated to accept such an 'order'.*" (Emphasis added).

Even if the Coast Guard were accorded the status of a time charterer it would not as such be entitled to the benefits of the Limited Liability Act. *In re Barracuda Tanker Corporation,* 409 F.2d 1013, 1015 (2d Cir. 1969). When the government claims status as a charterer it is entitled to limit liability only if it has complete control and authority over the ship during the term of its use of the vessel. *Austerberry v. United States,* 169 F.2d 583 (6th Cir. 1948).

The majority struggles mightily, but in my view unsuccessfully, to surmount Congress' failure to extend limited liability to the government for acts of public vessels not owned or chartered by it. It first argues that since the Secretary of the Navy is authorized to settle claims for damages caused by a vessel in its service on the basis of strict liability, treating the vessel as a "public vessel of the United States" and a "vessel of the Coast Guard," it is "unlikely that Congress intended that such a public vessel be considered a Coast Guard vessel for settlement purposes but a privately owned vessel in the event of litigation." (Maj. opin., *supra, p.* 727). This circular reasoning simply begs the question. The fact that a ship is a "public vessel," whether for purposes of liability or settlement, does not make it a privately-owned one entitled to limited liability within the plain language of 46 U.S.C. § 789.

The statute's plain language cannot be avoided by the majority's *ipse dixit* to the effect "that the United States should be treated as the owner *pro hac vice* of the public vessel." Dominion and control, absent here, are essential to such a status.

See *Austerberry, supra,* 169 F.2d at 593. The inescapable fact is that the United States was neither the owner nor the charterer of the boat. That the Coast Guard may, when it is the owner of a vessel, avail itself of 46 U.S.C. § 789, see *United States v. Sandra & Dennis Fishing Corp.,* 372 F.2d 189, 198–99 (1st Cir.), *cert. denied,* 389 U.S. 836, 88 S.Ct. 48, 19 L.Ed.2d 98 (1967), does not entitle it to do so when it is *not* the owner. Nor is the majority helped by reference to decisions holding that one who exercises "dominion over a vessel should be able to limit his liability to that of an owner." (Maj. opin., *supra,* p. 727). The unavoidable fact here is that the Coast Guard did not exercise any dominion or control over the Galaxy, which was at all times operated and controlled by its owner, Mr. Bieder.

For these reasons I would affirm the judgment of the district court.