**In re: COMPLAINT FOR EXONERA-
TION FROM OR LIMITATION OF LI-
ABILITY OF SHELL OIL COMPANY
AND SHELL OFFSHORE INC. AS
OWNERS AND/OR OWNERS PRO
HAC VICE OF M/V EB II.**

Civ. A. 91–0711.

United States District Court,
E.D. Louisiana.

Dec. 2, 1991.

Arthur Anthony Crais, Jr., Peter Frank Liberto, Charles M. Raymond, Shell Oil Co., New Orleans, La., for Shell Oil Co., Shell Offshore, Inc.

Michael J. Kincade, Bailey, Rossi & Kincade, Metairie, La., for CIGNA Property and Cas. Companies.

Danny J. Lirette, St. Martin, Lirette & Shea, Houma, La., Robert A. Chaffin, Chaffin Law Firm, Houston, Tex., for Raymond Sheppard, Nadine Sheppard; David E. Long, Rita Long.

Michael A. Fenasci, Fenasci & Smith, Israel M. Augustine, Jr., Israel M. Augustine, Jr. & Associates, New Orleans, La., for Linda Henry, Moses Simeon.

John J. Cummings, III, Cummings, Cummings & Dudenhefer, Palmer Lambert, Linda Jane Nelson, Lambert & Nelson, New Orleans, La., Calvin Clifford Fayard, Jr., Fayard & Kuhn, Denham Springs, La., for Wanda C. Dillon, Jimmy L. Dillon.

Timothy F. Burr, Gerard Joseph Sonnier, Galloway, Johnson, New Orleans, La., for Coastline Const., Inc.

## ORDER AND REASONS

CHARLES SCHWARTZ, JR., District Judge.

This matter is before the Court on the below listed motions of the parties in the captioned matter:

(1) Motions to Dismiss the Complaint of Shell Oil Company for Lack of Standing Pursuant to F.R.C.P. Rule 12(b)(1) [1] filed on behalf of claimants, Wanda Dillon, individually and on behalf of the estate of deceased, James E. Dillon, and Jimmy L. Dillon, father of the deceased (hereinafter referred to collectively as the "Dillons"), David Long and Rita Long (hereinafter collectively referred to as the "Longs"), and Raymond Sheppard and Rita Sheppard (hereinafter referred to collectively as the "Sheppards");

(2) Motion to Modify the Limitations Injunction to Permit State Court Actions Brought Against Shell Solely in its Capacity as Owner/Operator of the East Bay Field filed on behalf of claimants, the Longs and the Sheppards; and

(3) Motion to Extend Stay to their respective shareholders, Shell Petroleum Inc. and Shell Energy Resources, Inc. filed on behalf of plaintiffs in limitation, Shell Oil Company ("SOC") and Shell Offshore, Inc. ("SOI") and sometimes referred to collectively hereinafter "Shell."

Formal opposition, supplemental memoranda and supporting documents filed with respect to each of the motions have been considered by the Court. The matters were originally set for oral hearing on Wednesday, November 13, 1991, but were continued, reset for hearing on Wednesday, November 27th, 1991. However, the matter was submitted on the briefs, without a hearing, upon receipt of supplemental memoranda and exhibits submitted on behalf of both claimants and plaintiffs in limitation.

### I. Factual/Procedural Background.

This proceeding arises from an incident which occurred on or about February 15, 1991 involving the M/V EBII ("EBII"). Plaintiffs in Limitation, SOC (unquestionably record/former owner of the EBII) [2] and SOI (admittedly the "actual" owner of the EBII) [3] claim to be "owners" of the EBII, within the meaning of The Limitation of Liability Act, 46 U.S.C.App. § 183. On February 15, 1991 the EBII, a jack-up barge, was located near the mouth of the Mississippi River in the Gulf of Mexico [known as South Pass, East Bay], adjacent to Well 10–A. The EBII had been piloted to that location and "jacked-up" to the level of Well 10–A earlier that morning. The mechanics of the accident were that the operator of the hydraulic crane aboard the EBII, while attempting to lift grating from the well jacket onto the EBII, tore a valve from the gas lift line. This activity released pressurized natural gas into the area of the EBII which ignited. The fire

---

1. Prior to the hearing on the Motion to Dismiss claimants informed the Court that they desired to withdraw their Motion to Dismiss as to Shell Offshore Inc. and further indicated to the Court their intention to pursue said motion only with respect to Shell Oil Company.

2. *See,* Conveyance of Vessels dated December 15, 1982, indicating Shell Oil Company was the former vendor of the EBII (Claimants' Appendix B, Exh. "C–1" and "C–7" to Supplemental Memorandum in Support of 12(b)(1) Motion to Dismiss); Permanent Coast Guard Certificate No. 168, indicating Shell Oil Company as registered owner of the EBII at all pertinent times (attachment to Shell's Supplemental Memorandum In Opposition to Claimants' 12(b)(1) Motion to Dis-

miss); Deposition of Thomas C. Odom, taken November 22, 1991, pp. 6–14 (Appendix A to Claimants' Supplemental Memorandum In Support of 12(b)(1) Motion to Dismiss); and Affidavit of S.J. Paul, Secretary of Shell Offshore, Inc., dated November 25, 1991, certifying that SOI is a wholly owned subsidiary of Shell Energy Resources, Inc., which is in turn the wholly owned subsidiary of Shell Oil Company (attachment to Shell's Supplemental Memorandum in Opposition to Claimants' 12(b)(1) Motion to Dismiss).

3. *See,* Claimant's Supplemental Memorandum in Support of Motion to Dismiss Shell Oil Company, at p. 2, wherein claimants concede that "Shell Offshore, Inc. is the true and equitable owner of the 'EBII.'"

allegedly caused injury allegedly to claimants, Raymond Sheppard, David Long, William H. Taylor, and the deaths of James Earl Dillon, Juan Anthony Simeon, and Roland L. Johnson, who were aboard the EBII. The well jacket adjacent to the EBII was unmanned.

Claimants admit that SOI was "owner" of the EBII at the time of the accident up until the present time [4], and concomitantly argue that SOC (record/former owner) is without standing to bring this limitation action.

Plaintiffs in Limitation, SOI and SOC have submitted the Act of Sale of December 1, 1982 (Shell Exh. "A"), evidencing conveyance of the EBII from SOC [5] to SOI. It is not disputed that SOC was the former owner, as well as record owner of the EBII, at the time of the accident at issue.

## II. The Law.

### A. *Standard Under Rule 12(b)(1).*

■ Unlike the Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court.[6] It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its

burden of establishing that the court, in fact, has subject matter jurisdiction. The district court obviously does not abuse its discretion by looking to the extra-pleading material and may, in a clear-cut case, dismiss the suit for lack of subject matter jurisdiction.[7]

In the case at bar both plaintiffs and claimants have submitted extra-pleading material; thus, it is appropriate for this Court to consider such evidence in the Rule 12(b)(1) context.

### B. *Limitation of Liability.*

Whether plaintiff in limitation SOC has a right to limitation of liability depends upon whether the Limitation of Liability Act, 46 U.S.C.App. § 181 *et seq.* applies to the facts of the case. Section 183(a) of the Limitation Act provides:

> The liability of the *owner* of any vessel ... for any loss, damage, or injury ... done, occasioned, or incurred, without the privity or knowledge of such *owner* or *owners*, shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending. *Id.* [emphasis supplied].

■ Plaintiffs in limitation have the burden of proof to establish the application of the limitation provisions of 46 U.S.C.App. § 183(a) to the facts of this case.[8] The

---

**4.** As previously mentioned at note 1, *supra,* prior to the hearing scheduled November 27, 1991, claimants withdrew their motion to dismiss as to plaintiff in limitation SOI.

**5.** Shell is the transferring owner [i.e., former owner of the EBII], Coast Guard Licensee and public owner of record, Shell Exh. 2.

**6.** *See, Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598, 602 n. 1 (5th Cir.), *cert. dismissed,* 458 U.S. 1122, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982), vacating the district court's judgment that plaintiff lacked standing to pursue an antitrust claim against defendants and stating:

> The trial court dismissed the suit under Rule 12(b), but did not specify whether the dismissal was under 12(b)(1), lack of subject matter jurisdiction, or 12(b)(6), failure to state a claim upon which relief can be granted. If the latter, the court could not look beyond the face of the pleadings and thus if dismissal was conditioned upon the contestable issues of fact, the trial court's action was

improper. If the court's action was based on Rule 12(b)(1), it could go beyond the pleadings to determine its own jurisdiction, but since it did not hold an evidentiary hearing to determine the disputed factual issues, its dismissal on that ground would also be improper. This circuit has stated that dismissal for lack of subject matter jurisdiction 'should be granted sparingly....' [citations omitted]. *Id.* See also, *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.), *cert. denied,* 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989).

**7.** *Martin,* 665 F.2d at 602. It is here important to mention that the Fifth Circuit has not gone as far as the Ninth Circuit, which held in *St. Clair, supra,* that the Court may even resolve factual disputes.

**8.** *Coryell v. Phipps,* 317 U.S. 406, 409, 63 S.Ct. 291, 292, 87 L.Ed. 363 (1943); *Hernandez v. M/V Rajaan,* 841 F.2d 582, 591 (5th Cir.), *corrected, reh'g denied, en banc,* 848 F.2d 498 (5th Cir.1988), *cert. denied,* 488 U.S. 981, 109 S.Ct.

parties do not dispute the applicability of this act to the accident involving the EBII, rather the issue presented by claimants and petitioners motions are: (1) whether plaintiff in limitation, Shell Oil Company, qualifies as an "owner" of EBII within the meaning of Section 183; (2) whether an otherwise qualified "owner" is entitled to limitation when said "owner" is also subject to suit arising out of the same accident but in a capacity other than owner; and (3) whether shareholders of the "owner" come within the ambit of the protections afforded by the Limitation Act. The Court will address these issues serially and in the above mentioned order.

## C. Section 183 "Owner".

■ Claimants contend that SOC is not the "owner" because Shell Offshore Inc. was the actual, equitable and/or true owner at all pertinent times. SOC argues in opposition that as record owner at the pertinent time and former owner of the EBII, it qualifies as "owner" and is therefore

entitled to limitation of liability pursuant section 183 to the Limitation Act.[9]

The term "owner" is not defined in the Limitation of Liability Act. Cases have construed it as an "untechnical word" which should be given a broad construction so as to achieve Congress' purpose of inducing and encouraging investment in shipping.[10]

The term "owner" does not require title, but rather, as a general rule, one who is subjected to a shipowner's liability because of his exercise of dominion over a [i.e., relationship to] the vessel should be able to limit his liability to that of an owner.[11] More succinctly stated, the act is designed to cover one who is a "likely target" for liability claims predicated on his status as the person perhaps ultimately responsible for the vessel's maintenance and operation.[12]

The rule that emerges from all of the cases interpreting ownership pursuant to Section 183 is that if the plaintiff in limitation may be held liable because of his own-

---

530, 102 L.Ed.2d 562 (1988), cert. denied, 488 U.S. 1030, 109 S.Ct. 837, 102 L.Ed.2d 970 (1989).

9. In Supplemental Memorandum in Opposition to Claimants' Rule 12(b)(1) Motion to Dismiss against Shell Oil Company, Shell further argues:

To substantiate Shell's argument that Shell Oil Company, in addition to being the owner of title and specifically listed on the Coast Guard registration, is also the owner in a capacity to sufficient to warrant standing to bring the limitation action ... [it] attaches ... [1] the registration from the Coast Guard with Shell Oil Company listed as owner and [2] the Certificate of the Secretary of Shell Offshore Inc., S.J. Paul, certifying that Shell Offshore, Inc. is a wholly owned subsidiary of Shell Energy Resources, Inc. and that Shell Energy Resources, Inc. is a wholly owned subsidiary of Shell Oil Company. The effect of this Certificate is to establish that Shell Oil Company owns and absolutely controls Shell Energy Resources, Inc. and Shell Energy Resources, Inc. is the holding company and entirely owns and controls Shell Offshore Inc. That is to say no one else but Shell Oil Company owns any of the stock of Shell Energy Resources, Inc. and that no one else but Shell Energy Resources Inc. owns any of the stock of Shell Offshore Inc. Therefore the owner of the EBII is Shell Oil Company. Id. pp. 1–2.
Perhaps herein lies the reason why SOC remains title/registered owner of the EBII. Claimants' seek to characterize the SOC's retention of title as a mere administrative oversight, when the

facts posited by SOC suggest a valid business reason for retaining "ownership" of the EBII.

10. Coryell, 317 U.S. at 411, 63 S.Ct. at 293–94; Flink v. Paladini, 279 U.S. 59, 49 S.Ct. 255, 256, 73 L.Ed. 613 (1929); Standard Oil Co. of New Jersey v. Southern Pacific Co., 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890 (1925); Dick v. United States, 671 F.2d 724, 727 (2nd Cir.1982); Admiral Towing Co. v. Woolen, 290 F.2d 641, 645 (9th Cir.1961); Austerberry v. United States, 169 F.2d 583, 593 (6th Cir.1948); In re The Trojan, 167 F.Supp. 576 (N.D.Cal.1958); In re Petition of Colonial Trust Co., 124 F.Supp. 73 (D.Conn. 1954); The Milwaukee, 48 F.2d 842 (E.D.Wis. 1931). "These cases have held such diverse parties as shareholders, mortgagees, prior vendors, life tenants, trustees, and government agencies in wartime to be "owners" entitled to limit their liability." In re Barracuda Tanker Corp., 281 F.Supp. 228 (S.D.N.Y.1968) (stating the rule that emerges from these cases is that, if petitioner may be held liable because of his ownership or control of the vessel, he can maintain a petition to limit his liability).

11. Dick, 671 F.2d at 724; Admiral Towing Co. v. Woolen, 290 F.2d 641, 644–46 (9th Cir.1961); In re Petition of United States, 259 F.2d 608, 610 (3rd Cir.1958); Complaint of B.F.T. No. Two Corp., 433 F.Supp. 854, 871–73 (E.D.Pa.1977); The Milwaukee, 48 F.2d 842 (E.D.Wis.1931).

12. Admiral Towing, 290 F.2d at 645.

ership or control of the vessel, then he can maintain a limitation action.[13]

Moving claimants have in fact "taken aim" at both SOC and SOI, the EBII's former/record owner and actual/owner *pro hac vice*, respectively. This Court cannot hold on the facts presently before it, that SOC can never be held liable as an "owner."[14] Moreover, this Court may retain jurisdiction to dispose of the "concourse" of claims asserted against it.

### D. Dual Capacity—Cela Ne Fait Rien.[15]

■ Moving claimants contend that the injunction previously issued by this Court should be modified so as to allow them to proceed against Shell in its capacity other than as "owner" of the EBII—that is, as owner and operator of the East Bay Field. Perhaps recognizing that their claims against Shell would not escape the umbrella of limitation, the moving claimants have carefully worded certain claims so as to avoid allegations that Shell's liability flows from its "ownership" or "control" of the EBII.[16] Nevertheless, analysis of their claims[17] leads to the inescapable conclusion that, in the event that claimants are successful in holding any of the Shell entities accountable, it may well be as "owner" of

the vessel as that term has been explained above and construed in the past.

In *Olympic Towing Corp. v. Nebel Towing Co.*, 419 F.2d 230, 235 (5th Cir.1969), *cert. denied*, 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970),[18] the Fifth Circuit recognized that inequities can result if such other non-limitation proceedings are allowed to continue. The court further stated that the admiralty court is generally acknowledged to possess broad injunctive power to ensure "the orderly and effective operation of the Limitation Act." *Id.* In *Complaint of Paradise Holdings, Inc.*, 795 F.2d 756 (9th Cir.1986), the appellate court upheld the district court's stay of state court proceedings against the non-owner parties, and explained:

> We conclude therefore, that it is sometimes inconsistent with the purposes of the Act to permit some limitation action claimants to proceed in state court ... in advance of an equitable division of the limitation fund among all potential claimants. *Id.* at 763.

Citing *Nebel Towing, supra*, the court in *Paradise Holdings* further explained that a "major purpose of the Act is to permit the shipowner to retain the benefit of his insurance" and that " 'the reason for requiring the limitation proceeding be completed first is to permit the vessel owner to

---

**13.** *See, In re Barracuda Tanker, supra* at note 7.

**14.** Unquestionably, SOC's contractual relationship [i.e., record/former owner] to the EBII might reasonably furnish ground upon which a claim for limitation of liability for damage could be asserted.

**15.** As they say in France, "it doesn't make any difference."

**16.** *See,* Claimant's Supplemental Memorandum in Support of Claimant's Motion to Modify, at pp. 1–2, wherein they restate their claims against the Shell entities in their capacity other than as "owners", to wit:

> Claimants contend that the well jacket 10A as well as the entire East Bay Field gas lift system was defectively designed and constructed. Claimants further contend that this defective design and construction of the offshore facilities was a major cause of the accident of February 15, 191 [*sic* 1991]....
> \* \* \* \* \* \*
> A cause of action based upon negligent operation of the 'EBII' is totally separate from lia-

bility arising out of negligent design and construction of platform 10A and its associated gas system.

**17.** Plaintiff's in limitation aptly argue, as follows:

> The primary focus of the activity resulting in the event of this limitation is the crane operation aboard the vessel. The well jacket in question is a small *unmanned* well jacket. The six men aboard the vessel included, Bill Taylor, of the EBII and a five man maintenance crew.
> *See,* Plaintiffs' Memorandum in Opposition to Motion to Dismiss, at pp. 2–3, wherein it is argued that claimants "artificially allocate the claimed negligence,"—that is, "some to the vessel and some to the platform."

**18.** The *Nebel* decision was overruled by *Crown Zellerbach Corp. v. Ingram Industries, Inc.*, 783 F.2d 1296, 1301 (5th Cir.1986), to the extent that it held limitation to be a personal defense under Louisiana law, and held that the owner's insurer had a right to limitation of liability.

receive the benefit of his insurance.' " *Id.* at 762–63. The court was further concerned with the "real possibility that the state court litigation [would] have some preclusive effect on the issues in the limitation proceeding." *Id.*

Under Supplemental Rule F(3) an owner, upon compliance with Supplemental Rule F(1), is generally entitled to an injunction enjoining the further prosecution of *all claims* against him or his property. There is no provision whatsoever regarding an "owner" who is subject to suit in yet another capacity. The case law is simply devoid of any support for the "dual capacity" exception pertaining to Section 183 "owners" as theorized by moving claimants herein.

The limitation proceeding's purposes other than encouraging investment in the shipping industry figure significantly in this Court's determination of the issues before it.[19] Augustus Hand wrote early on in the jurisprudence: "The purpose of a limitation proceeding is not merely to limit liability but to bring *all* claims into concourse and settle *every* dispute in *one* action." *The Quarrington Court*, 102 F.2d 916, 918 (2nd Cir.), *cert. denied*, 307 U.S. 645, 59 S.Ct. 1043, 83 L.Ed. 1525 (1939) (emphasis added).

A critical purpose underlying the limitation action is to achieve a *"complete* and just disposition of a many-cornered controversy."[20] Thus, the limitation proceeding furthers the goal of uniformity which has been declared a dominant requirement for admiralty law. The importance of this aspect was reiterated by Justice Frankfurter in *Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 74 S.Ct. 608, 611–12, 98 L.Ed. 806 (1954), wherein it is stated:

> The heart of [the limitation] system is a concursus of all claims to ensure prompt

economical disposition of controversies in which there are often a multitude of claimants.... Moreover, it is important to bear in mind that the concursus is not solely for the benefit of the shipowner. The elaborate notice provisions of the Admiralty Rules are designed to protect injured claimants. *Id.*

Moving claimants' motion to modify the injunction is antithetical to the very nature of the limitation proceeding. This Court's concern emanates directly from the congressional concern for judicial economy, the bedrock of the Limitation Act and procedures. Achieving judicial economy therefore is the law which this Court is bound to follow. The Limitation of Liability Act provides this Court with the power to enjoin suits against the "owner" to achieve *uniformity* and accordingly, assure that all claims will be heard in a single forum.

The Supreme Court stated in *Metropolitan Redwood Lumber Co. v. Doe*, 223 U.S. 365, 371, 32 S.Ct. 275, 275, 56 L.Ed. 473 (1912), that "the very nature of the proceeding is such that it must be exclusive of any other separate suit against an owner on account of the ship." *Id.*

For all of the aforementioned reasons this Court declines claimants' invitation to modify the injunction heretofore issued herein in connection with claims against Shell.

E. *Extension of Stay to Include Shell's Shareholders.*

■ The etiology of Shell's Motion for extension of stay prohibiting claimants from prosecuting actions arising out of the subject incident against its shareholders, Shell Energy Resources, Inc. ("SER") and Shell Petroleum, Inc. ("SPI"), is as follows. Shell contends in its Supplemental Memo-

---

**19.** The original impetus for limitation was to encourage investments in the shipping industry. Justice Black questioned the continued vitality of this basis for limitation in his dissenting opinion in *Maryland Casualty Co. v. Cushing,* 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954) stating that many of the conditions in the shipping industry which spurred passage of the act no longer prevail. Despite the criticism, the act is still intact and most recently commentators have emphasized the role the limitation pro-

ceeding plays, paving the way for "realistic insurance coverage and reasonable apportionment of costs of a maritime disaster." J. Schoenbaum, *Admiralty and Maritime Law* § 14–1 (1987).

**20.** *Hartford Accident & Indemnity Co. v. Southern Pacific Co.,* 273 U.S. 207, 216, 47 S.Ct. 357, 359, 71 L.Ed. 612 (1927) [emphasis supplied].

randum in Support of Extension of Stay, on page 1, that "claimants have informed counsel for petitioners that a suit will be filed against [SER] and [SPI] as the corporate entities which hold stock in [SOI] and [SOC], respectively." Suit has in fact been filed against said shareholders. Based on the foregoing, Shell filed its Motion to Extend Stay to prohibit claimants' from prosecuting any such action against its [i.e., "owners'"] shareholders.

Shell relies on the Supreme Court's decision in *Flink v. Paladini*, 279 U.S. 59, 49 S.Ct. 255, 73 L.Ed. 613 (1929), as authority for extension of stay, inasmuch as the *Flink* Court extended limitation to stockholders, recognizing that "their pecuniary interest in the vessel did not differ substantially from those who held shares in the ship." *Id.*

Claimants argue in opposition that *Flink*, supra, is no longer the law, citing *Calkins v. Graham*, 667 F.2d 1292 (9th Cir.1982), which is inapposite. In *Calkins*, the facts were that petitioner's [Calkins'] mother had agreed to sell the vessel, the Lucky One, to Calkins or to such third party as he may select. *Id.* at 1293. Later, Alaska Oregon Fisheries, Inc. ("AOF") agreed to purchase the vessel. Calkins was president and 75% shareholder of AOF. Title was not transferred to AOF, but rather, AOF entered into an oral agreement to sell the vessel to Eileen Ballo, who was to pay the purchase price in installments. AOF delivered the vessel to Ballo, after which the accident which gave rise to the limitation proceeding occurred. It was only sometime after the accident that AOF obtained legal title to the vessel. *Id.*

In other words, in *Calkins*, at no time prior to or at the time of the accident was AOF an "owner" of the vessel, having neither legal title, nor possession and control at any pertinent time. Certainly, as the court in *Calkins* ruled, Calkins himself could have no relationship/interest in the vessel *via* AOF, who was also not an "owner" pursuant to Section 183. The facts

upon which the *Calkins* court predicated its decision, were simply that: (1) neither AOF nor Calkins were the titled owner of the vessel at any time prior to or on the date of the accident; (2) neither AOF nor Calkins had possession or control of the vessel at the time of the accident, since Ballo had possession and control and responsibility for the vessel's maintenance under the sales agreement with AOF; (3) neither AOF nor Calkins had any money invested in the vessel at any pertinent time.

The *Calkins* court's discussion of *Flink*, supra, is pure dicta, inasmuch as the AOF, in which company Calkins was a 75% shareholder, had no interest in the vessel at any pertinent time. In *Flink*, there was no question but that A. Paladini, Inc. "owned" the vessel at the time of the accident, accordingly the shareholders were likely targets having a pecuniary interest in the vessel at the pertinent time. The *Flink* Court concluded:

> Having no doubt of the comprehensive purpose of Congress we should not be ingenious to interpret the California statute in such a way as to raise questions whether it could be allowed to interfere with the uniformity which has been the dominant requirement for admiralty law. 49 S.Ct. at 256.

This Court disagrees with the interpretation claimants seek to foist upon *Calkins*, such that it overrules the gist of *Flink*, thus rendering it "obsolete." The right to limitation, since *Flink* and up until the present time, remains broadly construed and extends to any person whose interest in the vessel is such that he may be a likely target.

Which brings this Court full circle to the instant case, wherein claimants seek to impose liability upon shareholders of Shell, SER and SPI, "likely targets" by virtue of their relationship to the vessel as shareholders of its "owners." [21] Accordingly, and considering all of the submissions of the parties and the law applicable to the issues before this Court,

---

**21.** As previously stated *supra* at note 9, SOC submitted documents to the effect that SOC wholly owns and controls SER, which holding company entirely owns and controls SOI.

IT IS ORDERED that Claimants' Motions to Dismiss the Complaint in Limitation of Shell Oil Company Pursuant to F.R.C.P. Rule 12(b)(1) are hereby DENIED.

IT IS FURTHER ORDERED that Claimants' Motions to Dismiss the Complaint in Limitation of Shell Offshore, Inc. are MOOT, claimants having formally withdrawn said Motions.

IT IS FURTHER ORDERED that Claimants' Motions to Modify the Injunction to Allow State Court Suits to Proceed Against Shell in its Capacity as Owner and Operator of the East Bay Field are hereby DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Extend Stay to Enjoin Proceedings Against its Shareholders, Shell Energy Resources, Inc., and Shell Petroleum, Inc., is hereby GRANTED.